1                    IN THE UNITED STATES DISTRICT COURT

2                         FOR THE DISTRICT OF OREGON

3     UNITED STATES OF AMERICA,          )
                                         )   Case No. 3:16-CR-0051-BR
4              Plaintiff,                )
                                         )
5     v.                                 )   June 15, 2016
                                         )
6     AMMON BUNDY (1),                   )
      JON RITZHEIMER (2),                )
7     JOSEPH O'SHAUGHNESSY (3),          )
      RYAN PAYNE (4),                    )
8     RYAN BUNDY (5),                    )
      BRIAN CAVALIER (6),                )
9     SHAWNA COX (7),                    )
      PETER SANTILLI (8),                )
10    JASON PATRICK (9),                 )
      DUANE LEO EHMER (10),              )
11    DYLAN ANDERSON (11),               )
      SEAN ANDERSON (12),                )
12    DAVID LEE FRY (13),                )
      JEFF WAYNE BANTA (14),             )
13    SANDRA LYNN ANDERSON (15),         )
      KENNETH MEDENBACH (16),            )
14    BLAINE COOPER (17),                )
      WESLEY KJAR (18),                  )
15    NEIL WAMPLER (20),                 )
      DARRYL WILLIAM THORN (22),         )
16    TRAVIS COX (24),                   )
      JAKE RYAN (26),                    )
17                                       )
               Defendants.              )
18    _____)   Portland, Oregon

19

20                       TRANSCRIPT OF PROCEEDINGS
                    (Status Conference and Oral Argument)

21         BEFORE THE HONORABLE ANNA J. BROWN, DISTRICT JUDGE

22

23

24

25

```
 1   COURT REPORTER:          AMANDA M. LeGORE
                              CSR, RDR, FCRR, CRR, CE
 2                            U.S. Courthouse
                              1000 SW Third Avenue Suite 301
 3                            Portland, OR  97204
                              (503)326-8184
 4

 5

 6   APPEARANCES:
     FOR THE PLAINTIFF:       GEOFFREY BARROW
 7                            ETHAN KNIGHT
                              CRAIG GABRIEL
 8                            Assistant U.S. Attorneys
                              U.S. Attorney's Office
 9                            1000 SW Third Avenue, Suite 600
                              Portland, OR  97204
10                            (503)727-1000

11   FOR DEFENDANT AMMON
     BUNDY:                   J. MORGAN PHILPOT
12                            JM Philpot Law
                              1063 E. Alpine Drive
13                            Alpine, UT 84004
                              (801)810-8369
14
                              MARCUS MUMFORD
15                            Marcus R. Mumford, PC
                              405 S. Main Street, Suite 975
16                            Salt Lake City, UT 84111
                              (801)428-2000
17
     FOR DEFENDANT
18   JON RITZHEIMER:          TERRI WOOD
                              Law Office of Terri Wood
19                            730 Van Buren Street
                              Eugene, OR 97402
20                            (541)484-4171

21   FOR DEFENDANT JOSEPH
     O'SHAUGHNESSY:           AMY BAGGIO
22                            Baggio Law
                              621 SW Morrison, Suite 1025
23                            Portland, OR  97205
                              (503)222-9830
24

25
```

```
 1   APPEARANCES:  (continuing)
     FOR DEFENDANT RYAN
 2   PAYNE:                    RICHARD FEDERICO
                               Assistant Federal Defender
 3                             101 SW Main Street, Suite 1700
                               Portland, OR  97204
 4                             (503)326-2123

 5   FOR DEFENDANT RYAN
     BUNDY:                    RYAN BUNDY
 6                             Pro se
                               79400-065
 7
                               LISA LUDWIG
 8                             Standby Counsel
                               811 SW Naito Parkway, Suite 500
 9                             Portland, OR  97204
                               (503)223-5570
10
     FOR DEFENDANT BRIAN
11   CAVALIER:                 TODD BOFFERDING
                               Bofferding Law Office, PC
12                             1215 B Street
                               PO Box 539
13                             Hood River, OR 97031
                               (541)490-9012
14
     FOR DEFENDANT SHAWNA
15   COX:                      TIFFANY HARRIS
     (defendant present        121 SW Salmon Street, Suite 1420
16   telephonically)           Portland, OR  97204
                               (503)546-2927
17
18   FOR DEFENDANT PETER
     SANTILLI:                 AMY BAGGIO
19                             621 SW Morrison, Suite 1025
                               Portland, OR  97205
20                             (503)222-9830

21

22

23

24

25
```

```
1    APPEARANCES:  (continuing)
     FOR DEFENDANT JASON
2    PATRICK:                  JASON PATRICK
                               Pro Se
3                              79454-065

4                              ANDREW KOHLMETZ
                               Standby Counsel
5                              Raivio, Kohlmetz & Steen, PC
                               741 SW Lincoln Street
6                              Portland, OR  97201
                               (503)224-1104
7

8    FOR DEFENDANT DUANE
     EHMER:                    MICHELE KOHLER
9                              Michele Kohler, PC
                               4380 SW Macadam Ave, Suite 500
10                             Portland, OR 97239
                               (503) 219-9300
11

     FOR DEFENDANT DYLAN
12   ANDERSON:                 SAMUEL KAUFFMAN
     (not present)             Kauffman Kilberg, LLC
13                             1001 SW 5th Avenue, Suite 1414
                               Portland, OR  97204
14                             (503)224-2595

15   FOR DEFENDANT SEAN
     ANDERSON:                 MATTHEW McHENRY
16   (not present)             Levine & McHenry, LLC
                               1001 SW Fifth Avenue, Suite 1414
17                             Portland, OR  97204
                               (503)546-3927
18

     FOR DEFENDANT DAVID
19   FRY:                      PER OLSON
                               Hoevet Olson Howes, PC
20                             1000 SW Broadway, Suite 1500
                               Portland, OR  97205
21                             (503)228-0497

22   FOR DEFENDANT JEFF
     BANTA:                    ROBERT SALISBURY
23   (not present)             330 South 1st Street
                               PO Box 1272
24                             St. Helens, OR  97051
                               (503)397-9000

25
```

```
 1   APPEARANCES:   (continuing)
     FOR DEFENDANT SANDRA
 2   ANDERSON:                    TYL BAKKER
     (not present)                Tyl W. Bakker, LLC
 3                                621 SW Alder Street, Suite 621
                                  Portland, OR   97205
 4                                (503)721-0140

 5   FOR DEFENDANT KENNETH
     MEDENBACH:                   KENNETH MEDENBACH
 6                                Pro Se
                                  25795-086
 7
                                  ROBERT SALISBURY
 8                                (Appearing as standby counsel in place
                                   of Matthew Schindler)
 9                                330 South 1st Street
                                  PO Box 1272
10                                St. Helens, OR   97051
                                  (503)397-9000
11
     FOR DEFENDANT BLAINE
12   COOPER:                      KRISTA SHIPSEY
                                  820 SW 2nd Avenue, Suite 275
13                                Portland, OR   97204
                                  (503)309-9024
14
     FOR DEFENDANT WESLEY
15   KJAR:                        JAMES HALLEY
     (not present)                735 SW First Avenue, 2nd Floor
16                                Portland, OR   97204
                                  (503)295-0301
17
     FOR DEFENDANT NEIL
18   WAMPLER:                     TIFFANY HARRIS
     (not present)                (Appearing as standby counsel in place
19                                of Ms. Lisa Maxfield)
                                  811 SW Naito Parkway, Suite 500
20                                Portland, OR   97204
                                  (971)634-1818
21

22   FOR DEFENDANT DARRYL
     THORN:                       LAURIE SHERTZ
23                                Laurie Shertz, LLC
                                  121 SW Salmon Street, 11th Floor
24                                Portland, OR   97204
                                  (503)406-2136
25
```

```
 1    APPEARANCES:  (continuing)
      FOR DEFENDANT TRAVIS
 2    COX:                      PAUL HOOD
      (not present)             Paul Hood, Attorney at Law, LLC
 3                              1001 SW 5th Avenue, Suite 1415
                                Portland, OR  97204
 4                              (541)513-7545

 5    FOR DEFENDANT JAKE
      RYAN:                     JESSE MERRITHEW
 6    (not present)             Levi Merrithew Horst, LLP
                                610 SW Alder Street, Suite 415
 7                              Portland, OR  97205
                                (971)229-1241
 8

 9
      ALSO PRESENT:             JON HUNT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                  (Wednesday, June 15, 2016; 9:30 a.m.)

 2

 3                        P R O C E E D I N G S

 4

 5             THE COURT:  Good morning, everyone.  Please be

 6   seated, everyone.

 7             Mr. Knight.

 8             MR. KNIGHT:  Morning, your Honor.  We're present

 9   today in the matter of the United States versus Ammon Bundy, et

10   al.  This is Case No. 16-CR-00051.

11             Ethan Knight, Geoff Barrow, and Craig Gabriel

12   appearing on behalf of the United States.

13             Defendants with counsel and with waivers noted are as

14   follows, your Honor.

15             Defendant Ammon Bundy is present with counsel Morgan

16   Philpot and Marcus Mumford.

17             THE COURT:  Gentlemen, welcome.

18             MR. MUMFORD:  Thank you.

19             THE COURT:  Good morning.

20             MR. KNIGHT:  Defendant Jon Ritzheimer is present in

21   the courtroom with counsel Terri Wood.

22             THE COURT:  Good morning.

23             MR. KNIGHT:  Defendant Joseph O'Shaughnessy is

24   present in the courtroom with counsel Amy Baggio.

25             Defendant Ryan Payne is present in the courtroom with
```

1    counsel Rich Federico.

2         Defendant Ryan Bundy, appearing on his own behalf, is

3    present in the courtroom with standby counsel Lisa Ludwig.

4         THE COURT:  Good morning.

5         DEFENDANT RYAN BUNDY:  Good morning.

6         MR. KNIGHT:  Defendant Ryan Cavalier is present in

7    the courtroom with counsel Todd Bofferding.

8         Defendant Shawna Cox is present by telephone.

9    Appearing on her behalf today, Tiffany Harris.

10        THE COURT:  Has she actually connected at this point?

11        MS. HARRIS:  I don't think --

12        DEFENDANT SEAN ANDERSON:  Good morning.

13        THE COURT:  Oh, she's there.  All right, Ms. Cox.

14   Good morning.

15        And, Ms. Harris, good morning.

16        MS. HARRIS:  Good morning.

17        MR. KNIGHT:  Defendant Peter Santilli is present in

18   the courtroom.  Appearing on his behalf today, counsel Amy

19   Baggio.

20        THE COURT:  Good morning.

21        DEFENDANT SANTILLI:  Good morning.

22        MR. KNIGHT:  Defendant Jason Patrick is present in

23   the courtroom, appearing on his own behalf, with standby

24   counsel Andrew Kohlmetz.

25        MR. KOHLMETZ:  Good morning, your Honor.

1          THE COURT:  Good morning.

2          MR. KNIGHT:  Defendant Duane Ehmer, present in the

3     courtroom with counsel Michele Kohler.

4          THE COURT:  Good morning.

5          MS. KOHLER:  Good morning, your Honor.

6          THE COURT:  Welcome, Ms. Kohler.

7          MR. KNIGHT:  Defendant Dylan Anderson has waived his

8     personal appearance.  Appearing on his behalf today is counsel

9     Samuel Kauffman.

10          MR. KAUFFMAN:  Good morning, your Honor.

11          MR. KNIGHT:  Defendant Sean Anderson has waived his

12     personal appearance.  Counsel Matthew McHenry, I believe, is

13     present.  Yes.

14          THE COURT:  He is indeed.  Good morning.

15          MR. McHENRY:  Good morning.

16          MR. KNIGHT:  Defendant David Fry is present in the

17     courtroom with counsel Per Olson.

18          MR. OLSON:  Good morning, your Honor.

19          THE COURT:  Good morning.

20          MR. KNIGHT:  Defendant Jeff Banta has waived his

21     personal appearance.  Appearing on his behalf today, your

22     Honor, is counsel Robert Salisbury.

23          MR. SALISBURY:  Good morning, your Honor.

24          MR. KNIGHT:  Defendant Sandra Anderson has waived her

25     personal appearance.  Appearing on her behalf today, counsel

1    Tyl Bakker.

2              MR. BAKKER:  Your Honor.

3              THE COURT:  Good morning.

4              MR. KNIGHT:  Defendant Kenneth Medenbach appearing on

5    his own behalf, is present in the courtroom today.

6              DEFENDANT MEDENBACH:  Good morning, your Honor.

7              MR. KNIGHT:  Standby counsel Matthew Schindler is not

8    present.  And appearing with Mr. Medenbach today, in a standby

9    capacity, is Mr. Salisbury.

10             DEFENDANT MEDENBACH:  Sometime during the hearing

11   today I would like to make some comments.

12             THE COURT:  Can you tell me what it's about, so I

13   know where to put it.

14             DEFENDANT MEDENBACH:  In regards to a motion to

15   dismiss.

16             THE COURT:  One already filed or yet another one?

17             DEFENDANT MEDENBACH:  Another one.

18             THE COURT:  All right.  We'll put it on the list,

19   Mr. Medenbach.

20             DEFENDANT MEDENBACH:  Thank you.

21             THE COURT:  Go ahead and take a seat.

22             MR. KNIGHT:  Defendant Blaine Cooper is present in

23   the courtroom with counsel Krista Shipsey.

24             THE COURT:  Good morning.

25             MR. KNIGHT:  Defendant Wesley Kjar has waived his

1    personal appearance.  Appearing on his behalf today, counsel

2    James Halley.

3            MR. HALLEY:  Good morning, your Honor.

4            THE COURT:  Good morning.

5            MR. KNIGHT:  Defendant Neil Wampler has waived his

6    personal appearance.  Appearing on his behalf today is counsel

7    tiffany Harris.

8            MS. HARRIS:  (Nods head.)

9            MR. KNIGHT:  Defendant Jason Blomgren has waived his

10   personal appearance.  And counsel of record, Mr. Rainwater, has

11   also indicated to the Court he's waived his appearance as well.

12           THE COURT:  They've been excused from today.

13           MR. KNIGHT:  Defendant Darryl Thorn is present in the

14   courtroom.  Counsel Laurie Shertz is not present.  Appearing,

15   perhaps, on Mr. Thorn's behalf today, Mr. Hood.

16           THE COURT:  Mr. Thorn is scheduled for a proceeding

17   this afternoon and was actually excused.  He's welcome to stay,

18   but he doesn't have to be here, and his counsel is also

19   excused.  Thank you.

20           MR. KNIGHT:  Defendant Travis Cox has waived his

21   personal appearance.  Appearing on his behalf today is counsel

22   Paul Hood.

23           MR. HOOD:  Good morning, your Honor.

24           THE COURT:  Good morning.

25           MR. KNIGHT:  And defendant Jake Ryan has waived his

1   personal appearance today.  Appearing on his behalf, counsel

2   Jesse Merrithew.

3                MR. MERRITHEW:  Good morning.

4                THE COURT:  All right.  Ms. Shipsey?

5                (Defendant Cooper exiting courtroom.)

6                MS. SHIPSEY:  Your Honor, he's going to need to waive

7   his appearance for medical reasons right now.

8                THE COURT:  Does he want to waive?

9                MS. SHIPSEY:  He does, your Honor.

10               THE COURT:  All right.  Then he may.

11               All right.  Mr. Thorn, you're free to go at any point

12   that you want to go.  All right?

13               DEFENDANT THORN:  Thank you, your Honor.

14               THE COURT:  So let's proceed with the agenda.

15               Just a reminder for counsel who represent parties who

16   wish to waive personal appearances for these hearings, those

17   appearance waivers need to be signed personally by the client,

18   just to ensure there is a deliberate decision for each of those

19   waiver decisions.

20               I wanted to update you briefly on the jury summons

21   process.

22               The summonses and "dear prospective juror" letters

23   you helped me work on all went out.  I did not add to the

24   letter the proposed additional language that expanded on a

25   juror's duty to serve.  I simply left the letter in the form

1   that you saw it last.

2           We've had numerous responses.  Many requests for

3   hardship deferrals or excuses the Court and the jury supervisor

4   are going through now.  But I can tell you we have several

5   hundred jurors who have responded and not sought a hardship

6   excuse based on time or based on other issues.  So we do have a

7   good response underway.

8           Once we identify the pool of jurors who have not been

9   excused or deferred because of these hardships, then as we

10  previously discussed, those jurors will be sent a jury

11  questionnaire.

12          One of the things you're supposed to be submitting

13  today are the jointly proposed questionnaire documents, and I

14  want to be sure you're on track to do that.

15          Who can speak to me about that?

16          Mr. Knight?

17          MR. KNIGHT:  We are, your Honor.  The parties have

18  conferred, and we expect those will be filed, I believe, at the

19  end of the day.

20          MR. FEDERICO:  Yes, your Honor.  Ms. Baggio and

21  Mr. Knight and I met yesterday.  And I agree with the statement

22  that they'll be filed today.

23          THE COURT:  All right.  So my intention is to take

24  your input, add to it potentially, delete from it potentially,

25  send it back to you for one more opportunity for input before I

14

1    finalize the questionnaire.

2         Once finalized, then it will go to that pool of

3    jurors who have not been excused for hardship.  I should say,

4    many of the jurors were also exempt.  Some no longer lived in

5    Oregon.  Some are beyond the statutory age, and so forth.  So

6    we're reducing the pool based on those matters.

7         And, again, if -- I'm optimistic that there will be a

8    wide pool available to complete the questionnaires, which, of

9    course, will generate more bases, I'm sure, for potential

10   excuse.

11        Ms. Baggio.

12        MS. BAGGIO:  Thank you, your Honor.

13        Regarding process -- and I believe that this is a

14   joint request -- the Court had directed the parties to file the

15   proposed questionnaire in the public record, and I believe we

16   would ask if the Court would allow us to provide that to the

17   Court by letter, so that it's not in circulation.

18        THE COURT:  Because it's a draft, as long as it's

19   submitted in a joint form, as you're -- you have been doing,

20   that works for me.  Eventually there will be some form of

21   record.  I don't know the extent to which it will be public,

22   but I -- pardon me.  (Coughing.)  I will need to be making some

23   orders in the very near future around issues of juror

24   anonymity, and the like, to the extent that needs to happen.

25   So for the moment, yes, you may submit your proposed

1  questionnaires to the Court by e-mail.

2          MS. BAGGIO:  Thank you.

3          THE COURT:  Counsel.

4          MR. KOHLMETZ:  Your Honor, Andrew Kohlmetz.  At

5  Mr. Patrick's request, last week I filed an ECF -- a joint

6  funding request in his name for a jury consultant to assist in

7  the drafting of his juror -- the juror questionnaire,

8  specifically with regard to addressing the issues of pretrial

9  publicity.  We have not heard back yet --

10         THE COURT:  It has not come to me yet.

11         MR. KOHLMETZ:  Okay.  Mr. Patrick would ask leave

12  simply to supplement the proposed juror questionnaire.

13         THE COURT:  Well, you know what the process is.  When

14  it goes, it goes.  If you have an opportunity to input into it,

15  you will; and if you don't, you don't.  There's only so much I

16  can do.

17         The questionnaire has to go out by early July in

18  order for all of the parties going to trial to have meaningful

19  time for the responses.

20         MR. KOHLMETZ:  Certainly.

21         THE COURT:  A consultant may or may not be helpful

22  for preparing a questionnaire.  A consultant may or may not be

23  needed for voir dire or in the evaluation of the responses.

24  But I will -- as soon as the request reaches me, I'll act on

25  it.

1          You know the process.  It has to go through a number

2    of steps before it comes to me, and as of last night, it hadn't

3    been there.

4          MR. KOHLMETZ:  Thank you, your Honor.

5          THE COURT:  All right.  Very good.

6          All right.  There was also today a -- the deadline

7    for filing round 2 motions and the jointly proposed jury

8    instructions.

9          With respect to the latter, who can speak to me on

10   your status there?

11         Ms. Baggio.

12         MS. BAGGIO:  Thank you, your Honor.

13         The parties have been working to confer on that.  The

14   Government has provide their instructions.  We've provided the

15   Government our instructions.  It is in a joint submission.

16         We're just finalizing that today, and we do expect

17   that to be filed within the Court's deadline.

18         THE COURT:  Very good.

19         And with respect to round 2 motions, that term has

20   been used in a variety contexts, and I see now that the parties

21   intended that round 2 motion headline to include a variety of

22   discovery issues, which I'll address specifically.  But in

23   addition to the two motions that were filed yesterday, I need

24   someone to tell me what motions are coming today, June 15, the

25   deadline; beyond the two that have been filed.

1        Mr. Olson.

2        MR. OLSON:  Well, your Honor.  Not in actual response

3   to your question, but originally, I was intending to file a

4   motion to suppress Facebook search warrant material.  Because

5   this is an issue that's cropped up fairly recently for me, I'm

6   asking for an extension of time to Monday to file that.

7   Mr. Knight has no objection to that.  It won't affect the

8   current schedule as set.

9        THE COURT:  And is this a motion you're anticipating

10  client-specific to Mr. Fry?  Or with respect to others?  Or

11  what?

12       MR. OLSON:  It's general.  It's going to be filed on

13  behalf of any and all defendants whose Facebook accounts were

14  seized pursuant to search warrant.

15       There may be some particularized arguments that

16  relate to particular defendants, but it's primarily an issue of

17  overbreadth.

18       THE COURT:  All right.  Who else -- before I respond

19  to that, I need to know what else is coming.

20       Mr. Federico?

21       MR. FEDERICO:  Your Honor, on behalf of Mr. Payne, I

22  anticipate filing -- or will be filing two motions to suppress

23  today.

24       The first is a motion to suppress Facebook evidence

25  under a different theory than what Mr. Olson will be filing.

1    This one will challenge the underlying legality on

2    jurisdictional limits of the warrants, issued both in Nevada

3    and Oregon.

4        Your Honor, I believe it will have applicability

5    beyond Mr. Payne, so I would anticipate it would apply to most

6    all defendants who would seek to suppress the evidence.

7        One issue regarding the filing itself is -- my

8    intention is to file the motion on ECF, and a public filing.

9    I've discussed it with Mr. Knight.

10       However, the warrants themselves remain under seal in

11   the protective order and so -- and particularly the Nevada

12   warrant has only been provided in discovery to those defendants

13   also charged in Nevada.

14       So I the procedure I intend to follow, absent the

15   Court direction to the contrary, is to file both the exhibits

16   or the warrants under seal by hand delivery to the Court and

17   the Government.  Again, the defendants have been provided the

18   Oregon ones in discovery.  And those who are charged in Nevada

19   already have them in the Nevada discovery as well.

20       THE COURT:  All right.  So a public filing of the

21   motion and the memorandum, but the underlying sealed materials

22   not on the public record?

23       MR. FEDERICO:  Correct, your Honor.

24       THE COURT:  That's fine.

25       MR. FEDERICO:  A second motion to be filed today,

1   your Honor, is, again, a motion to suppress.  This one is

2   regarding e-mail information of Mr. Payne that was seized

3   pursuant to a warrant.

4          I frankly don't know whether or not that will have

5   applicability to other defendants as well.  And regarding the

6   sealing of that exhibit as well, we may need to follow the same

7   procedure.  We're still looking into whether or not some of

8   those materials are under seal as well.

9          THE COURT:  Can you give me the basic theory behind

10  this second motion to suppress?

11         MR. FEDERICO:  Yes, your Honor.

12         It's basically a particularity requirement on the

13  warrant itself regarding the -- sort of the scope of the e-mail

14  information that was seized.

15         THE COURT:  And say again, is this specific to

16  Mr. Payne or to others as well?

17         MR. FEDERICO:  Your Honor, I'm not sure how many it

18  would apply to.  The warrant itself was particular to him.

19  Whether or not there are other e-mail accounts that have the

20  same theory to suppress, I'm just not in a position to say.

21         THE COURT:  All right.  Ms. Baggio.

22         MS. BAGGIO:  Thank you, your Honor.  Excuse me.

23         With regard to the defendants charged in the Nevada

24  case, Mr. Olson is writing an overbreadth challenge to the

25  Oregon Facebook warrant.  And he's doing that on behalf of all

1   Oregon defendants whose accounts were seized.

2          There are the separate Facebook warrants for the

3   Nevada defendants, but the same issues regarding overbreadth

4   apply to the Nevada warrants.  Therefore, what I am doing is

5   I'm filing a separate motion suppress but incorporating all of

6   the arguments raised by Mr. Olson as to the Oregon warrants as

7   to the Nevada warrants.

8          THE COURT:  And this will be on behalf of those

9   defendants only who are common to both cases?

10         MS. BAGGIO:  And whose e-mail -- excuse me, Facebook

11  accounts were seized, that is correct.  And, therefore, I would

12  also ask for permission to file that on Monday, since I'm

13  relying on Mr. Olson's pleading.

14         THE COURT:  All right.  I am collecting requests

15  right now, not making rulings.  Just trying to --

16         Hold on, sir.  Just a moment.

17         (Mr. Mumford being seated.)

18         THE COURT:  Go ahead, Ms. Baggio.

19         MS. BAGGIO:  And the other question -- again, sort of

20  a practical one -- to avoid filing numerous exhibits that

21  are -- I think the one Facebook application is about 98 pages

22  long.  That would be relevant to the motion I'm filing as to

23  Nevada, as would the one that Mr. Federico is filing.  Would

24  the Court allow us to refer to the exhibits filed as to another

25  motion to suppress, if it's the exact same document?

1          THE COURT:  Yes.

2          MS. BAGGIO:  Or would the Court like -- okay.  Thank

3   you.

4          THE COURT:  Yes.  So long as the record is clear

5   where the reference is on which the argument is based, so that

6   we know where to find it.

7          Mr. Mumford, just a minute.  There was one ahead of

8   you.

9          MR. KOHLMETZ:  Yeah, just briefly.  Mr. Patrick's

10  long-threatened motion for change of venue, that was -- it will

11  be filed this afternoon as well.

12         THE COURT:  All right.  Mr. Mumford.

13         MR. MUMFORD:  Yes, your Honor.  Your Honor, thank

14  you.  As we talk about these round 2 motions -- and,

15  understand, we're -- we're just coming into the case, getting

16  up to speed.  One of the issues that I see that we really face

17  here is we don't even know if the discovery is complete yet.

18         I understood that the Government was supposed to have

19  had certified the completeness of its discovery by May 15th.  I

20  understand that has not been done.

21         THE COURT:  The Government certified substantial

22  completion by may -- by mid-May.  They did do that.

23         MR. MUMFORD:  What does that mean, exactly?

24         THE COURT:  Counsel, you're going to need to talk

25  with opposing counsel about what they mean by that, and so

1    forth.  I can't take the time now to bring you up to speed on

2    that.

3         What's your point, though, with respect to round 2

4    motions?

5         MR. MUMFORD:  Well, your Honor, we have not received

6    discovery.  We have not -- we do not know what -- what is there

7    or is not there.

8         THE COURT:  Have you spoken with the prosecutors yet?

9         MR. MUMFORD:  I don't think we've spoken with the

10   prosecutors.  I've been speaking with our -- our -- our

11   discovery team here.

12        THE COURT:  All right.  So, Mr. Mumford, you need to

13   meet with the prosecution team.  You need to bring yourself up

14   to speed in terms of what has been disclosed and not.  All of

15   the defendants have been under my order, working together

16   cooperatively, receiving discovery and the like, and you need

17   to make that conferral.  And if you have an issue after that

18   conferral, I'm happy to address it.

19        MR. MUMFORD:  Well, I think, your Honor, I can

20   anticipate that we -- we will.

21        THE COURT:  Mr. Mumford, you need to follow the

22   Court's direction.  There is an overarching order --

23        MR. MUMFORD:  I understand.

24        THE COURT:  -- please listen.

25        There's an overarching order in effect, and I won't

1    be taking up time in court hearings until there's been

2    affirmative conferral on whatever issue.

3            Since you haven't even spoken with the prosecutors

4    yet, you need to do that first.  You need to speak with

5    Ms. Baggio and Mr. Federico, who've been taking a lot of the

6    lead on the discovery issues.  And once --

7            MR. MUMFORD:  I --

8            THE COURT:  May I please finish, sir.  Sir?

9            MR. MUMFORD:  Well, you're assuming that I haven't.

10           THE COURT:  Sir?

11           MR. MUMFORD:  You're assuming I haven't.

12           THE COURT:  I asked you and you said you had not.

13           MR. MUMFORD:  I've been conferring with Ms. Baggio.

14           THE COURT:  I asked if you conferred with the

15    prosecutors.

16           MR. MUMFORD:  Well, I've been conferring -- how about

17    this?  I've been conferring with the prosecutors through

18    Ms. Baggio and the other defense counsel.

19           THE COURT:  Mr. Mumford -- Mr. Mumford, enough now.

20    I'm making a ruling.

21           I'll take up your concern about whatever it is you

22    want to get to once you meet with the prosecution team, and you

23    all file a joint report to me as to whatever the issues are.

24           MR. MUMFORD:  I think the issue I'm speaking of is

25    contemplated in the joint status report that we did confer

1   with --

2           THE COURT:  Then define the issue, please, because

3   you haven't.  You told me you didn't know about discovery.  You

4   didn't know about --

5           MR. MUMFORD:  Okay.

6           THE COURT:  And that already has been accomplished.

7           MR. MUMFORD:  I'll get right to it, then.

8           THE COURT:  Yes, please.

9           MR. MUMFORD:  It is -- we anticipate seeking leave of

10  the Court to extend the entirety of the -- of the -- motion

11  deadlines that have been brought and raised to this -- this --

12  this -- at this point here, your Honor.  Because how --

13  having -- having not received -- not received discovery, not

14  being able to review it, we don't feel like we can be subject

15  to a round 2 motion -- motion deadline at this time.

16          THE COURT:  All right.  Let me hear, first, from

17  someone on the prosecution team, and then I'll get back to this

18  point.

19          Who wants to address this?

20          Mr. Barrow.

21          MR. BARROW:  Yes, your Honor.

22          As to discovery, what is the Court's question?

23          THE COURT:  I want you to respond to Mr. Mumford's

24  point that he and his clients have not received discovery.  I

25  want you to respond to Mr. Mumford's point that there hasn't

1    been certification by the Government.  And I want you to

2    respond to and clarify whether there's been any contact by

3    Mr. Ammon Bundy's new counsel with the prosecution team.

4              MR. BARROW:  Certainly, your Honor.

5              The prosecution team has reached out to counsel for

6    Mr. Bundy -- new counsel for Mr. Bundy and has not received any

7    response.  There's been no phone calls and no in-person

8    meetings.  We are available to meet with them today, or

9    whenever they would like.

10             Discovery, of course, has been provided to

11   Mr. Bundy's prior counsel and has been provided as we've

12   outlined in the various reports to the Court.  And on May 16th,

13   the Government certified in the status reports substantial

14   compliance with the discovery.

15             THE COURT:  Thank you.

16             So, Mr. Mumford, to that, do you have anything you

17   wanted to add?

18             MR. MUMFORD:  I don't -- I don't -- I don't know that

19   they --

20             THE COURT:  I can't hear you, sir.

21             MR. MUMFORD:  Excuse me.

22             I don't know that they responded to my -- to the

23   anticipated -- the anticipated relief that we'll seek.  But

24   I'll -- I'll confer with everyone.  I agree with the Court.

25             THE COURT:  So, Mr. Mumford, here's the bottom line.

1   You certainly may file a motion to extend the deadline.  To do

2   so, you first must confer with the prosecutors about the issues

3   that underlie your request.

4        And once you have, then you will file with the

5   prosecutor a joint statement on the position of whether the

6   deadline should be extended or not.  That's -- that's what

7   needs to happen.

8        So confer with the prosecutors.  If you believe you

9   need to file a motion for leave to late-file these motions to

10  suppress or other round 2 motions, then explain that in a joint

11  statement and I'll take it up at that point.

12       Do you know, yet, whether there are any other

13  motions -- beyond what you've learned the co-defendants are

14  filing -- that you already know you'll be filing on behalf of

15  your client?

16       MR. MUMFORD:  Yes, your Honor.  We -- we do

17  anticipate bringing a motion to consolidate a release hearing

18  in both Oregon and Nevada matters.

19       I think it's fair to say that we're observing, in

20  that respect, the -- the -- the proceedings and the arguments

21  that Mr. Federico is currently pursuing in front of the Ninth

22  Circuit on that issue.

23       As your Honor knows, we do anticipate further

24  bringing a motion to release Mr. -- to obtain the release of

25  Mr. -- Mr. Bundy.

1          THE COURT:  I am not aware of that.  This is the

2     first I've heard of that.

3          MR. MUMFORD:  Well, it's been -- but it was -- it

4     was -- we were given the leave to -- to bring that at any time,

5     from earlier orders, as I understand it.

6          THE COURT:  Everyone has been addressing their

7     individual release issues.

8          In this instance, any motions for release should be

9     addressed to Senior District Judge Robert E. Jones.  He's been

10    kind enough to take those hearings, so --

11         MR. MUMFORD:  And it was only because -- your Honor

12    just asked me, what -- what -- what motions are that I'm -- I'm

13    bringing them up.

14         THE COURT:  And I thank you for letting me know

15    that's happening.  But just so you know, I want to be clear.  A

16    motion to release, again, is also subject to the conferral

17    point, and then it should be -- when filed, it will be docketed

18    by Judge Jones's chambers.

19         Beyond that, do you have specific motions you're

20    anticipating?

21         MR. MUMFORD:  Well, there are -- there will be, I --

22    I assure you that.

23         THE COURT:  Please tell me what they are.  Since

24    today's the deadline, I need to know what to anticipate and

25    plan for.

1          MR. MUMFORD:  Well, I think we have a motion to

2    suppress the -- I understand there was a -- a warrant issued

3    very early on and leave -- I believe we anticipate bringing a

4    Franks motion on that issue.  The false and material misleading

5    statements from the Government in obtaining that -- that

6    warrant to surveil, to conduct the -- I believe it's the -- the

7    Guardian system, is what it was.  A surveillance -- I think

8    it's the NSA -- as I understand it, something like that,

9    surveillance of Mr. Bundy.  And we believe there's -- we

10   believe there are grounds to bring a Franks motion on that.

11          Like I say, I'm conducting discovery, so I would

12   like -- that's one of the reasons why I anticipate them moving

13   to put the -- the -- the -- to put the motion schedule -- give

14   an extension on the motion schedule, so I can bring, as your

15   Honor knows, a well-founded and -- and detailed motion before

16   the Court so that -- so that the Court can make a -- an

17   advised --

18          THE COURT:  Well, just so you know from history,

19   Mr. Mumford, the motions deadline was set with the input of

20   Mr. Bundy's then counsel and all -- all lawyers participating.

21          I need to finish before you try to answer.

22          MR. MUMFORD:  Oh, okay.

23          THE COURT:  The September 7 trial date exists because

24   there are, like your client, people in custody who have not

25   waived speedy trial rights.  And I'm determined to move forward

1    to that date.

2            I will entertain any reasonable motion to continue

3    based on whatever real facts are.  But I assume, when you and

4    your colleague took on Mr. Bundy's representation, you did so

5    knowing of your client's insistence on his right to speedy

6    trial and the existing date.  So you have to understand the

7    case is being managed with all those interests in mind.

8            MR. MUMFORD:  (Nods head.)  Certainly do.  Thank you.

9            May I ask the Court a -- a question on that?  A

10   little bit of -- a little bit of clarification on that?

11           THE COURT:  Sure.

12           MR. MUMFORD:  It's my understanding that the Court

13   has declared this matter complex under the -- under the -- as

14   requested by the Government.  And therefore the speedy act --

15   Speedy Trial Act deadlines do not apply.

16           Now, your Honor is saying my client hasn't waived his

17   speedy trial.  I'm just trying to understand.  Is there a

18   distinction you're making between --

19           THE COURT:  The Speedy Trial Act still applies.  The

20   complex designation simply relieved the Court from trying the

21   matter within 70 days of the Indictment.  I'm still required to

22   bring the matter to trial respecting the speedy trial rights of

23   your client and others.

24           You may know, if you reviewed the record, that some

25   defendants have waived their speedy trial rights, and they've

1    been relieved from preparing for the September 7th trial.

2          So as far as I'm concerned, that is still the trial

3    date, and we're going to do everything we can to ensure that

4    we're ready to start picking a jury on that day in order to

5    move forward as to those defendants who have not waived their

6    speedy trial rights.

7          Any continuance under the Speedy Trial Act has to

8    find that the ends of justice warrant overriding the rights of

9    the parties to a speedy trial.

10          And so far, in the insistent face of a unified

11    presentation by all defendants in custody that they must have

12    their speedy trial rights observed, it's an issue that hasn't

13    arisen.  So I hope that gives you a basic answer.

14          We need to now move on to the other items on the --

15          MR. MUMFORD:  It does.  I would -- I would -- based

16    on that, I would tell the Court -- advise the Court that I

17    anticipate raising a motion to address those issues.  And if

18    you want me to, I can -- I can preview it and address that now.

19    Or, if you want me to, I can just wait.  I'll confer --

20          THE COURT:  If your client wants to waive his speedy

21    trial rights, I need to know right away.  And if that happens,

22    then the September 7 trial date may be adjusted for him.

23          If your client wants to move to continue the

24    speedy -- the September 7 trial date, he may file such a

25    motion, and we can take it up on the particulars.

1              But right now your issues are not on the agenda, and

2       I need to respect the fact that everyone else's are.  You were

3       invited to supplement the status report with a filing and you

4       didn't, so we have to move through these matters.

5              So if that's a motion you want to file, you've now

6       made me aware you want to file it, and I'll address scheduling

7       of those issues once I get feedback from everyone else.

8              MR. MUMFORD:  The -- and the -- just to clarify, the

9       motion that I anticipate filing is -- is that it is un -- is a

10      motion to dismiss based on it's unfair to -- to force a

11      defendant to choose between the speedy trial and a fair one.

12             THE COURT:  So what is it your client wants?  Does he

13      want to go to trial on September 7th or does he not?

14             MR. MUMFORD:  Well, your Honor's -- your Honor's

15      rulings have excused the Government from any consequences of

16      the delays on their part, while -- while holding Mr. Bundy's

17      feet to the fire, so to speak.

18             THE COURT:  No, Mr. Mumford.  I'm afraid you're

19      misunderstanding.  I've simply said that any defendant who

20      affirmatively waives speedy trial rights need not continue to

21      prepare for trial on September 7.  That's all I've ever said.

22             Your client insists on September -- a speedy trial.

23      That's the trial date.  No one has moved to continue that trial

24      date who has not waived speedy trial.  So if you want to make a

25      motion to continue that trial date, you may.

1        MR. MUMFORD:  I understand that.  And I think we've

2   got on the agenda today that that will be -- that the

3   deadline -- I think there's a proposed deadline for that at the

4   end --

5        THE COURT:  For motions to continue and motions to

6   sever, yes.  And I would like to get to that agenda.

7        MR. MUMFORD:  And I guess that's -- that's where I

8   am, is -- is would -- is it contemplated that that would be a

9   motion to extend the entirety of the pretrial schedule as well?

10  Or just --

11       THE COURT:  Any -- Mr. Mumford, hear me clearly.  I

12  am focused on September 7 for jury selection for those parties

13  who have not waived their speedy trial rights.  And I am doing

14  everything humanly possible to ensure that a fair trial

15  commences on September 7.

16       I suspect it's going to take days to pick a jury.  I

17  suspect thereafter it will take days to give opening

18  statements.  I suspect thereafter it will take days and weeks

19  for the Government to put on its case.  And I suspect a

20  defendant who chooses to offer evidence won't be in a position

21  to have to do so for months from today and about a month after

22  September 7.  So those are all moving targets, in my mind, with

23  respect to the obligations.

24       Now, please take a seat.  I need to get on with the

25  agenda.

1          MR. MUMFORD:  Your Honor brings to mind the words of
2     a pop song from the '80s, "Time -- time make lovers feel like
3     they got nothing but time."  And so I appreciate that.
4          THE COURT:  And we don't have nothing but time, sir.
5     We have rights to respect, as you've noted.  And I'm going to
6     try my best to ensure that we get to that day.
7          Now, who else has motions under round 2 headings that
8     haven't been identified?  Anybody else?
9          All right.
10         MR. FEDERICO:  Your Honor, I'm sorry.  One more
11    regarding a motion to suppress.
12         In -- the discovery joint status report identified
13    that there were digital devices seized that were produced to
14    the defendants on the 8th of June.  There's been some
15    accessibility issues of those.  They will be produced, as I
16    understand it; the raw images and forensic reports.  We don't
17    have those yet.  As we anticipated filing a motion to suppress
18    on those, it's difficult to know whether or not that's
19    something we would move to do until we have the underlying
20    data.  So I identify that to the Court as one that, I think
21    under the category of motion to suppress, would have fallen
22    under round 2.  But because we don't have the discovery on
23    that, I would ask for leave to file that.  You know, we can do
24    that, I think, fairly expeditiously after we receive the
25    discovery.  But that's on our --

1          THE COURT:  Let's address that specific point after

2     we go through the joint statement on the outstanding discovery

3     issues, and then I'll pull back to these deadlines thereafter.

4          I want -- as I alerted you in an e-mail, Counsel --

5     to appoint a committee to help me and court staff deal with the

6     physics of a courtroom layout for trial.

7          And so I let you know I needed one lawyer from each

8     side and one technical person from each side to be part of that

9     committee, to work with me and our IT personnel.

10          I will simply note on the issue of what that

11     courtroom is going to look like, we're still -- we're still

12     working on the layout issues, and I completely appreciate from

13     the joint status report the positions set out on behalf of

14     Mr. Ammon Bundy with respect to public observation.

15          I don't know how much public observation space will

16     be available, depending on how many bodies we have to

17     accommodate at trial, but there will be some.  And I can assure

18     you, we don't need to spend a lot of time on that front.

19          Those folks who are sitting in the back row in the

20     courtroom today know that the benches you're sitting on are

21     attached to the wall.  They're not going to be removed.  We're

22     going to do our very best to accommodate all of those who are

23     going to trial within the spaces available.

24          But if we need to remove one row because we have to

25     put a party there and there are lawyers, we'll do that.  But

1    that's a work in progress.  And this committee I'm about to

2    appoint is going to be working on that issue.

3              So you can rest assured there will be some in-court

4    public presence, and it's going to be driven in part by the

5    numbers of people we need to accommodate.

6              So is there one person who's identified for the

7    Government on this committee?

8              Mr. Knight?

9              MR. KNIGHT:  Yes, I'll be handling that, your Honor.

10             THE COURT:  And who will be with you?

11             MR. KNIGHT:  Ms. Raina Rallis from our litigation

12   support section.

13             THE COURT:  And on behalf of the defendants, who is

14   the one person?

15             MR. FEDERICO:  Your Honor, I volunteer myself in

16   supporting the -- Joseph Lohner, who is the chief paralegal

17   from the defender office.  He is highly technical.

18             THE COURT:  All right.  So I will be in touch with

19   the four of you to set up a meeting with our IT folks.  One of

20   the issues we're trying to address is simply the electronic

21   access from various tables to the electronic evidence display

22   systems.  The lines of sight from wherever counsel and parties

23   end up sitting, to the witness stand.  And then for the

24   inevitable overflow room, the ability to see in an overflow

25   room those who can't fit in the courtroom, what's going on in

1  the courtroom.

2          So we're going to need to know things like who's

3  going to be making the electronic evidence display

4  presentations.  And I think ideally it would be good for all

5  defense counsel to confer, who are going to trial, so that

6  there is one technical person the Court will look to.  And that

7  may be your colleague, Mr. Federico, to do the evidence display

8  presentations.  And then to figure out a way to protect the

9  work product other things along the way.  But we'll be setting

10  up a meeting to address that.

11          MR. MUMFORD:  Your Honor?

12          THE COURT:  Yes, Mr. Mumford.

13          MR. MUMFORD:  May I just address one issue to correct

14  the record here.

15          I believe the Government said that they had provided

16  discovery to us, as new counsel.  And we -- I just conferred

17  with Mr. Philpot, and neither of us have received any discovery

18  from --

19          THE COURT:  Have you not received materials from

20  Mr. Arnold's --

21          MR. MUMFORD:  We're receiving from his office, but I

22  understood them, in response to your Honor's question of the

23  Government, to say that they had been sending stuff to us.

24          And if that was -- if that was indeed what they said,

25  that is not accurate.

1           THE COURT:  Mr. Barrow?

2           MR. BARROW:  Your Honor, that is not what I said; I

3   said we sent the discovery to prior counsel.  We will work with

4   Mr. Philpot to send future discovery directly to him.  And I

5   believe other issues have been sent to him as well.

6           THE COURT:  All right.

7           MR. MUMFORD:  And so I'm assuming that means there's

8   been no discovery that's been produced since -- since we --

9   we --

10          THE COURT:  Counsel, you need to talk to --

11          MR. MUMFORD:  Yeah, I'll --

12          THE COURT:  -- the prosecutor and not through me.

13  Don't -- please don't take our time talking to him through me.

14  We don't have time for that.

15          Take a seat.

16          MR. MUMFORD:  I'll deal with that.  Thank you.

17          THE COURT:  Thank you very much.

18          All right.  I would like to address status on some

19  existing motions because I want to get these cleared as we go

20  to the disputed issues on the joint discovery statement.  It's

21  not clear to me, with respect to the Motion No. 545 to compel

22  notice of surveillance, what the parties' expectations are.

23          It looked to me, at first, as though the Government

24  had asserted and certified that this was not an issue because

25  there wasn't any.  And then I'm hearing discussion from

1   Mr. Mumford, and in other filings, about this still being an

2   issue.

3           So, Ms. Baggio, I think you filed the motion.  Can

4   you tell me what its status is from your perspective, please.

5           MS. BAGGIO:  Yes, your Honor.

6           Your Honor, as I understood the Court's e-mail from

7   June the 13th at 1:46 p.m., the Court asked if the defendants'

8   motion was moot in light of the Government's representation

9   that there was not any indication that there was involvement of

10  the NSA or any other intelligence agency to have collected

11  information relevant to this case.  And second, in any event,

12  there is not any such information in the possession of the

13  prosecution team or any agency acting on behalf of the

14  prosecution team.

15          I have been in touch with Mr. Knight about this.  And

16  it is correct that there are references in discovery to

17  different databases that were used by the Government in its

18  investigation of this case.  And I provided an example to the

19  Government of one such database.  And I believe that

20  Mr. Kohlmetz, in the context of some of these disputed

21  discovery issues, is going to address some of the other

22  databases.

23          It's our position, your Honor, that the issue does

24  need to be set for argument.  That in light of the specific

25  references in discovery that both, as to question 1, the

1    intelligence agencies were involved; and, as to question 2,

2    that information was made available to the prosecution team and

3    their investigators because it's in my discovery.  So that's

4    our position.

5           THE COURT:  All right.  Who's responding?

6    Mr. Knight?

7           MR. KNIGHT:  Thank you, your Honor.

8           Without getting too far into the substance, the

9    Government has a different view of what that discovery means.

10   And I think Ms. Baggio is correct.  Perhaps the best course

11   right now is to set the matter for argument, to put that before

12   the Court.

13          THE COURT:  With a reply on behalf of defendants to

14   make the points on an evidentiary -- you've actually filed a

15   response?

16          MR. KNIGHT:  Yes.

17          MS. BAGGIO:  I think it might be helpful to the Court

18   if I did file a response to some of these exhibits --

19          THE COURT:  Yes, when can you?  When?

20          MS. BAGGIO:  Friday of next week, your Honor?  Would

21   that be okay?

22          THE COURT:  I need a calendar.  Give me a minute.

23          (Pause, referring.)

24          MS. BAGGIO:  Your Honor, may I add something else,

25   please?

1           THE COURT:  On that particular issue?

2           MS. BAGGIO:  Yes, ma'am.

3           THE COURT:  Yes.

4           MS. BAGGIO:  If -- I can make it happen by this

5    Friday, your Honor.  I mean, I have this done.  So if that

6    would be helpful, I can make it by this Friday.

7           THE COURT:  Well, I'm going to be reasonable in

8    trying to put all of this together, so let me just add it to

9    the list of things I need to set before we're finished this

10   morning.  So --

11          MS. BAGGIO:  Thank you.

12          THE COURT:  And then I take it you're asking for oral

13   argument, as opposed to the Court looking at the record only?

14          MS. BAGGIO:  That is correct, your Honor.  Thank you.

15          (Pause, referring.)

16          MS. SHERTZ:  Your Honor?

17          THE COURT:  So -- yes, Ms. Shertz.

18          MS. SHERTZ:  While there's a brief pause, your Honor,

19   I just wanted to note for the record that Mr. Thorn had

20   initially waived his appearance this morning and then notified

21   me a few minutes after 10:00 that he wished to be here this

22   morning.  And he is present, out of custody, at this time.

23          THE COURT:  We did note his appearance.  I think we

24   did.  Yes.  And I told him he was free to go whenever he wanted

25   to, and that you had been excused.

1        Right?

2        MS. SHERTZ:  I'm just trying to catch up this

3  morning.

4        THE COURT:  All right.  Very good.  All right.

5        Before I get into all of the issues concerning the

6  discovery matters on your joint report, I wanted simply to note

7  and get an update with respect to the Ninth Circuit matter and

8  its relation to the pending motion to dismiss No. 480.

9        Mr. Federico, can you tell me where things stand

10  there?

11        MR. FEDERICO:  Yes, your Honor.  Oral argument is

12  scheduled for tomorrow morning at 10:00 a.m., in San Francisco,

13  on the issue.

14        The Court -- the Ninth Circuit had granted an

15  expedited consideration.  I don't know, frankly, what that

16  means in terms of how long it will take the Court to issue a

17  ruling or opinion, but oral argument is tomorrow morning.

18        THE COURT:  Have you supplemented the record at all

19  with the fact of your pending motion to dismiss here or the one

20  that was filed in Nevada?

21        MR. FEDERICO:  Yes, your Honor.  The Court -- the

22  Ninth Circuit ordered supplemental briefing on the question of

23  mootness in regards to the summaries that related to that

24  supplement briefing.  We did update the Court on what had

25  happened since the briefing prior, which was our reply.  So

1    that did include the motion to dismiss that was filed both here

2    and in the court in Nevada.

3         THE COURT:  All right.  Are you going?

4         MR. FEDERICO:  Yes, your Honor.

5         THE COURT:  And is anyone else arguing here from this

6    group?

7         DEFENDANT RYAN BUNDY:  Yes, your Honor.  I have the

8    right to be there.  I would like to be there myself.

9         THE COURT:  That's a matter you'll have to address to

10   the Ninth Circuit.  It's a matter I don't have any jurisdiction

11   over.  The Ninth Circuit determines participation in their oral

12   arguments, Mr. Bundy.

13        DEFENDANT RYAN BUNDY:  Okay.  They have -- you know,

14   they have asked that I be there, and so I need to be able -- to

15   be able to do so.

16        THE COURT:  This is the first I'm hearing that this

17   Court has any issue with it.  It's a matter of the Ninth

18   Circuit having an argument.  And I -- it's not my argument,

19   it's not my jurisdiction.

20        DEFENDANT RYAN BUNDY:  Okay.  So we're just

21   requesting that you order that I be transported there so that I

22   can be present.

23        THE COURT:  That's not possible in under 24 hours.

24   Not -- because you're in custody.  You may want to seek with

25   the Ninth Circuit an opportunity to participate by video, or

1   something.  But there's not any human way possible I can effect

2   your presence in San Francisco in under 24 hours with you in

3   custody.

4          I don't have jurisdiction over the matter, to begin

5   with, but even if I did, I couldn't do it.

6          DEFENDANT RYAN BUNDY:  Okay.  So I request release

7   from custody so that I may attend.

8          THE COURT:  That request is denied.

9          The matter has to be addressed to the Ninth Circuit.

10  It's not a matter for this Court to consider.  It's -- I'm

11  thinking of something else.

12          You're simply going to have to let the Ninth Circuit

13  know you want to participate in some fashion.  It's not

14  something I can address.

15          The appeals are filed to the Ninth Circuit, the

16  briefs are filed to the Ninth Circuit.  You and your standby

17  counsel can communicate with the Ninth Circuit.  But I don't

18  have any authority there, sir.

19          DEFENDANT RYAN BUNDY:  You -- okay.  You -- okay.

20  Thank you.

21          MR. FEDERICO:  Your Honor, to answer your question,

22  you had asked whether or not any others were going to be

23  addressing the Court.  I believe I will be addressing the Court

24  on behalf of -- there are actually five defendants who joined

25  the appeal, even though there are seven that are in both cases,

1   so I believe --

2           THE COURT:  Here?

3           MR. FEDERICO:  Yes, your Honor.  I believe I'll be

4   arguing on behalf of all five.

5           THE COURT:  And will any Government lawyer from the

6   District of Oregon be participating?

7           MR. KNIGHT:  Mr. Gorder will be appearing on behalf

8   of the Government, for the District of Oregon.

9           THE COURT:  Do you know if the District of Nevada's

10  counsel is participating or not?

11          MR. GABRIEL:  No, your Honor.  It says it's an appeal

12  from this Oregon case.  Only Mr. Gorder will appear.

13          THE COURT:  All right.  But the Court is aware of the

14  motion to dismiss pending in Nevada, too?

15          MR. FEDERICO:  Yes, your Honor.  It was included in

16  the briefing.

17          THE COURT:  Okay.  And then I just remind you, I

18  would like a joint report by June 20, as previously set, on

19  whether any developments there affect what we're doing here.

20          MR. FEDERICO:  Yes, your Honor.

21          DEFENDANT RYAN BUNDY:  Your Honor?

22          THE COURT:  Yes, sir.

23          DEFENDANT RYAN BUNDY:  I request immediate hearing

24  with Judge Jones per -- for pretrial detention, so that I --

25  because I am not waiving my right to attend that meeting, so --

1              (Pause, conferring with Ms. Ludwig.)

2              DEFENDANT RYAN BUNDY:  Yeah, I can get to San

3    Francisco by myself if the Court will release me.

4              THE COURT:  We're in session right now.  I'm not a

5    magician.  If you wanted to go and you wanted to have release

6    considered, you should have raised it earlier.

7              When we're finished in court today, I'll see if Judge

8    Jones is around.  But I don't know that we can address it now.

9    We have to move on, please.

10             (Pause, Ms. Ludwig and the defendant conferring.)

11             DEFENDANT RYAN BUNDY:  Thank you, your Honor.

12             THE COURT:  You're welcome.

13             Ms. Boyer, would you please, in the meantime, contact

14   Judge Jones' chambers.  And let them know of Mr. Bundy's

15   request to see him today about release, so that he personally

16   could travel to Nevada [sic] tomorrow.  Let him know that the

17   matter is pending before the Ninth Circuit, that I've indicated

18   the Court does not have jurisdiction; but he would like to

19   approach Judge Jones regarding release.  Just send an

20   electronic communication to alert them that the request is

21   made.

22             I don't, Mr. Bundy, have any idea whether he's even

23   here today or can address it.  But we'll at least get the word

24   to him.  All right?

25             Mr. Bundy?  Do you understand?

1           DEFENDANT RYAN BUNDY:  I do.  Yes.  Thank you.

2           THE COURT:  Mr. Santilli filed a motion No. 689 to

3   suppress eyewitness identification.  And there was a notice

4   that the Government was taking a look at the underlying facts

5   Mr. Santilli had asserted as a matter of fact the

6   identification had been erroneous because he wasn't in the

7   District of Oregon at the time.

8           Does the Government seek an opportunity to respond,

9   or does the Government concede?  What -- what's the approach

10  here on 689?

11          MR. KNIGHT:  We're still examining whether indeed the

12  factual representations made by Mr. Coan are accurate.  And

13  what we will do is confer with Mr. Coan after we determine if

14  indeed there needs to be a substantive response to the motion

15  or if we are withdrawing the evidence he seeks to suppress.

16          THE COURT:  When can you do that?

17          MR. KNIGHT:  We were contemplating taking that up in

18  the normal course, but we can report to the Court with -- in a

19  week what our position is with respect to 589.

20          THE COURT:  All right.  I'll get back to that too,

21  then, for scheduling.

22          I do intend to go through the entire discovery

23  dispute list, but I want to recover and return to a few other

24  points on the agenda generally.

25          It's critical for planning purposes for the parties

1    from everywhere -- from decisions having to do with how the

2    courtroom needs to be built out, the electronics to be

3    provided, the -- just the staffing and planning for trial.

4              And it's critical -- for purposes of these important

5    motions to sever, motions regarding the so-called **Bruton**

6    statements, 404(b) motions, it's critical on all of these

7    fronts that we have a -- as realistic a count of the number of

8    defendants who are continuing to plan to go to trial on

9    September 7.

10             I don't want to put any person in a position where he

11   or she doesn't want to make a public disclosure, but I want to

12   know what the parties' expectations are individually.  And so

13   I'm asking each defense counsel and for the parties who are

14   self-represented, the three parties self-represented through

15   their standby counsel, to please send to me an e-mail message

16   just to me.  You may copy the Government.  You may copy the

17   others if you wish.  But at least just to me, giving me your

18   current assessment of whether I should be counting you as

19   someone for whom I need to provide a place at trial; a desk, a

20   space, and all of that.  Those space issues are very important

21   to resolve.

22             I'm not going to hold you to these things.  They're

23   not binding.  But they're intended to be helpful to me in

24   making some physical decisions that will affect those of you

25   who are at trial.

1          You should know, for example, the tables you're

2    sitting at are going to be replaced with something that's

3    narrower, something that takes up less space.  I'm trying very

4    hard to figure out a smaller footprint, especially in light of

5    the concern about needing space for people to observe.  But I

6    need to be able reliably to make some plans.  So I'm asking all

7    of you to give me an e-mail message to that effect sometime

8    before Friday, noon.

9          Mr. Thorn?

10         DEFENDANT THORN:  Your Honor, for the record, I would

11   like to state that I would like to withdraw my plea today at

12   two o'clock.  I would also like to state that -- that in light

13   of my counsel's actions, in asking her to file several motions,

14   she hasn't.  I would like to file a motion for the Court for a

15   different counsel.

16         THE COURT:  Okay.  Mr. Thorn, I'm going to take all

17   of those individual matters up at two o'clock today.

18         Right now I've got everybody else on a different

19   agenda.  I thought you were coming at 2:00.  Whatever your

20   issues are, we'll deal with them then.  All right?

21         MS. SHERTZ:  Thank you, your Honor.

22         (Pause, referring.)

23         THE COURT:  All right.  The issue concerning motions

24   to continue a deadline, the motions to sever, a deadline for

25   the Government's disclosure of **Bruton** statements, a deadline

1    for the Government's disclosure of 404(b) evidence, those are

2    all things I would like to talk about right now.  And I

3    understand you have different perspectives as to what should go

4    first and who should go first.  But the fact of the matter is

5    these decisions need to get made.

6              I see, in the joint filing, that the parties agree

7    that June 30 is the deadline or should be the deadline for

8    filing motions to continue the September 7 trial date.

9              Is that still an accurate statement?

10             All right.

11             MR. FEDERICO:  Yes, your Honor.  I believe it is.

12             THE COURT:  All right.  Then that will be the date.

13   The --

14             MR. KOHLMETZ:  Your Honor -- your Honor, Mr. --

15             THE COURT:  I'm sorry.

16             MR. KOHLMETZ:  I'm sorry, your Honor.  Mr. Patrick --

17             THE COURT REPORTER:  I need you to turn on your

18   microphone.  I can't hear you.

19             THE COURT:  Turn on the microphone.

20             MR. KOHLMETZ:  It is on.

21             THE COURT REPORTER:  Okay.

22             MR. KOHLMETZ:  I'll move it closer.

23             THE COURT:  Could you move it closer to Mr. Patrick,

24   or trade places or something?  There you go.

25             MR. KOHLMETZ:  Just one second, your Honor.

1          THE COURT:  Okay.  Mr. Patrick.

2          DEFENDANT PATRICK:  I've been incarcerated for 140

3    days so far.

4          THE COURT:  Yes.

5          DEFENDANT PATRICK:  And apparently there's 4

6    terabytes of discovery, of which I've seen about 8,000 pages.

7    I'm going through those pages about 25 thou -- 2500 pages in a

8    24-hour period of time, in doing my due diligence to be

9    prepared.  But have absolute near zero access to the discovery.

10   It takes a week for me to get another box.  And there's all

11   kinds of video discovery that I filed motions to try and view.

12   And I don't -- I don't know how I'm being compelled to decide

13   whether I want to sever when all I really want to do, since the

14   very beginning of time, is just view the discovery.  And it's

15   nearly impossible, from my perspective.  It is --

16         THE COURT:  Mr. Kohlmetz, have you heard from Judge

17   Jones' chambers?

18         MR. KOHLMETZ:  I have, your Honor.  I explained to

19   Mr. Patrick that there is a meeting on the 22nd.

20         I am also -- I've told Mr. Patrick the arrangement

21   that I was able to make with MCIJ was the provision of one

22   bankers box of physical discovery.

23         I have about 20 of them in my office.  They've been

24   exchanging back and forth.  It's my understanding that some

25   other defendants may have access to three boxes.  I'll be

1  working -- I'll be making a phone call, probably tomorrow, to

2  Mr. Martinez, to see if I can get three boxes to Mr. Patrick.

3        Mr. Patrick also has pending a request for a

4  paralegal-type service to allow him to review the audio and

5  video discovery that I do have on a hard drive.  That funding

6  has not come through.  I told Mr. Patrick, as soon as the

7  funding is approved, if it's approved, I anticipate it will

8  be -- that the -- there will be a paralegal who can access and

9  review that discovery with him.

10        It is -- I do agree with Mr. Patrick, it's difficult,

11  but we're making the best of it.

12        THE COURT:  So, Mr. Patrick, your point is you don't

13  want to be bound by a June 30 date to move to continue.  You're

14  trying it your best to keep up and get up to speed.

15        DEFENDANT PATRICK:  I just -- I don't feel -- I don't

16  understand how I can be -- I've been asking, since the very

17  first time Mr. Kohlmetz and I met, I want access to all of the

18  discovery now.  I want it as quickly as possible, and it's --

19        THE COURT:  Mr. Patrick --

20        DEFENDANT PATRICK:  I understand.

21        THE COURT:  -- there are limitations.

22        DEFENDANT PATRICK:  I understand because -- I

23  understand.  I wasn't finished, but okay.

24        THE COURT:  There are limitations because of your

25  custody status.  Judge Jones has graciously agreed to try to

1    work through all of those issues.  His chambers is in contact

2    with you through Mr. Kohlmetz.  And so I urge you to continue

3    working hard on what you have.  If Mr. Kohlmetz can arrange

4    getting you more volume of boxes, all of those issues Judge

5    Jones will work on to the extent there's a dispute.

6          So please raise them with him.

7          DEFENDANT PATRICK:  Okay.  But I'm still going to be

8    held to a -- to a 30 -- between now and the 30th --

9          THE COURT:  You're going to do your best.  And with

10   every deadline I set, as you've seen, lawyers file things later

11   anyway because they say they have a constitutional right to do

12   so.  And I'm trying my very best to be fair on all fronts.

13         So, you know, if you want to move to continue and you

14   know it before June 30, you need to file the motion.  If you

15   don't know that you do and something develops thereafter, then

16   you're going to file a motion then.

17         But, you know, I'm taking seriously the fact that you

18   are in custody.  And I'm doing everything I can to ensure the

19   trial begins on time and we move through it fairly.

20         I can't -- I can't waive a magic wand, and I can't

21   make the fact that there is a lot of digital discovery here

22   anything other than it is.

23         The fact that it exists doesn't mean every digital

24   image has to be reviewed.  All the people who were there know

25   what they know already because they were there, and it's not

1    like you're having to learn it the first time.  But I

2    appreciate the need to know what the Government contends is

3    relevant, and I'm trying hard to get to a schedule that will

4    make that work.  So --

5           DEFENDANT PATRICK:  I guess it doesn't seem like in

6    140 days that due diligence is even remotely applied, I guess

7    is my -- what I'm trying to say.

8           THE COURT:  I understand your point.  I'm encouraging

9    you to work with Judge Jones, who's trying hard to facilitate

10   communications and access, and all of that.

11          So that's my response to that issue.

12          Go ahead and take a seat, please.

13          MR. KOHLMETZ:  Thank you, your Honor.

14          THE COURT:  Thank you.

15          All right.  So I'm going to leave the parties'

16   agreement regarding June 30 as the deadline for motions to

17   continue.

18          I'm going to expect counsel to send me a message this

19   week, everybody -- one way or the other -- about your

20   expectations for September 7; from counsel or the defendant to

21   me.  And then I'll at least have the benefit of that input.

22          I do want to talk about the order in which the issue

23   of severance, **Bruton** disclosures, and 404(b) disclosures should

24   be taken up.

25          Let me hear first from the Government with respect to

1    its view about what -- what's fair in light of the defendants'

2    perspective that they shouldn't have to move to sever,

3    shouldn't have to make that decision until the Government's

4    made its disclosures about **Bruton** issues and 404(b) issues.

5              The Government, on the other hand, is telling me they

6    don't want to have to make **Bruton** disclosures until they know

7    who's going to trial.  And I get that's ideally a perfect

8    world, but I -- I frankly think the defendants have the

9    stronger argument there.  That they shouldn't have to decide if

10   they want -- shouldn't have to try to make an argument that

11   they can't get a fair trial when linked with other defendants

12   until they know what the Government's really going to be

13   relying on at that trial.

14             Mr. Knight.

15             MR. KNIGHT:  Your Honor, in light of the Court's

16   comments and in light of No. 3 on the e-mail the Court

17   distributed to the parties, the Government is in agreement with

18   the Court's proposal, which is that we have a June 30th date

19   for severance and continuance but that the Government is

20   required, by July 6, to file notice of **Bruton** statements.  And

21   then the parties may file -- the defendants may file by July

22   15th -- may delay their filing of a motion to sever until that

23   time if leave is granted.

24             THE COURT:  And what about 404(b)?

25             MR. KNIGHT:  It's our position that that is an

1    inherently separate issue and that July 11th is a reasonable

2    time, at which point the Government would provide notice to

3    defendants regarding 404(b) evidence.

4           THE COURT:  All right.  Mr. Federico?  Ms. Baggio?

5    Or someone else?  To --

6           MR. FEDERICO:  Your Honor, I'll try to.

7           I have been on this issue.  I don't know if there's

8    unanimity.  But I think the position in the status report has

9    been consistent with letters that were submitted and provided

10   to the Court in the last few months.  But the majority, at

11   least, do prefer that they receive **Bruton** statements, at a

12   minimum, before the deadline for motions to sever.  I'll say

13   it's not unanimous.  Because, for example, on behalf of

14   Mr. Payne, I don't have any objection to the schedule the Court

15   has laid out, granting, essentially, leave to file severance

16   after **Bruton** has been disclosed.

17          But, on the other hand, I think it's fair to say the

18   majority stick to the position in the status report.  They

19   prefer **Bruton** be provided prior to severance, and the 404(b)

20   accompany **Bruton** as well.

21          THE COURT:  Is there a practical reason why the

22   Government can't -- cannot provide the anticipated **Bruton**

23   material; or at least the heart of it, if not all of it, sooner

24   rather than later?

25          MR. KNIGHT:  Well, there are two pieces of it, your

1    Honor.  One is substantive, and that is, simply reviewing the

2    material and making sure we do it in a thorough and coherent

3    fashion to give the correct and accurate notice to the

4    defendants.  And the other, really, is a procedural one.  And

5    that's what we've alluded to before, which is knowing who is

6    sitting in a room together in a joint trial really informs the

7    decision making about those statements.  And that, of course,

8    gets to the discussion we've had all along about the order.

9           I think reasonably speaking on the substantive issue,

10   July 6 is the soonest we can get that material together -- and

11   that's what the Court has put in the email -- and get it to the

12   parties.

13          THE COURT:  All right.  Let me think about that

14   convergence of issues.

15          All right.  I would like to turn to the issues

16   enumerated in the defense -- in the joint discovery chart --

17          MR. MERRITHEW:  Your Honor?

18          THE COURT:  I'm sorry.  Yes, Counsel.

19          MR. MERRITHEW:  On behalf of some of the folks that

20   have already waived speedy trial and asked for a continuance

21   and that continuance has been granted, just a point of

22   clarification.

23          I would ask that that order specifically reflect that

24   those severance motions, if they are contemplated by that

25   second group, not be due by July 15th.

1          THE COURT:  I will enter an order that any party

2     who's waived speedy trial with respect to September 7, is

3     relieved from the motion to sever deadline because your

4     calculus will be very different than the ones who are facing

5     the actual choice earlier.

6          Okay.  Let's go to the document 699, which summarizes

7     contested discovery issues, and the like.

8          I have to confess, Counsel, I was a bit surprised to

9     see this many substantive contested discovery issues after

10    having received what seemed like a representation from you in

11    your joint discovery reports that discovery was not generating

12    issues.  And, thus, I did relieve you from filing weekly

13    discovery status reports.

14         That relief is now gone.  By the end of today, you're

15    going to be back into a weekly discovery status report issue on

16    any matter that is not addressed with a different schedule this

17    morning, because there's a lot in dispute here.  And I need to

18    know about these issues as they're coming up, not en masse with

19    12 very substantive matters.

20         So let's start first with what is your first item,

21    and you called it:  Availability of all seized digital media to

22    all defendants.

23         My question here was whether it would be a solution

24    to this problem if all defendants agree that their media might

25    be shared with all of the defendants.  It appeared in part the

1    Government was concerned that it has access to one defendant's

2    media who might have private information, and it is concerned

3    about disclosing that media to another defendant.

4            If all the defendants agree that all of them could

5    see all of it, that would moot the Government's point, if I'm

6    understanding it.

7            Is that one of the Government's points?

8            MR. BARROW:  That's correct, your Honor.  If that was

9    the case, it would moot that issue.

10           THE COURT:  So let me ask Ms. Baggio this question:

11   To please undertake conferral with all defendants and see if

12   this issue cannot be mooted by a stipulation to that effect.

13   And then the Government can provide that which it was concerned

14   about providing.

15           If that does not solve the problem, then I want

16   another practical solution for the defendants to suggest.

17           And perhaps one's coming right now.  Counsel.

18           MS. WOOD:  Your Honor, I spoke with Mr. Barrows [sic]

19   this morning.  More to follow up on not just the digital

20   devices but the Facebook and raw data and I think the Nevada

21   discovery.  The ones that the defense had raised the same needs

22   for.

23           THE COURT:  Right.

24           MS. WOOD:  And my understanding in terms of the

25   digital devices, in particular, is that the Government has been

1   approached by -- and I don't know who, but some defense counsel

2   who have specifically requested that that information not be

3   provided.  So I --

4          THE COURT:  I think you all need to be frank with one

5   another, and talk this through.  And if the issue can be

6   resolved among a group of defendants, that group -- defendants

7   A through K -- all agree that their devices may be shared with

8   everybody, that moots part of it.

9          I want a solution that gets you past this

10   time-consuming roadblock.

11          MS. WOOD:  And the other thing I would say, your

12   Honor, is that the Government -- although it's not in writing

13   there -- agrees that they would comply with the alternative

14   that was proposed by the defense; that they give us any

15   co-conspirator statements which they would be using, the Rule

16   16 material, and **Brady** material.  And so --

17          THE COURT:  So, Ms. Wood, I'm assigning to you the

18   responsibility to continue conferral on those three categories.

19          To the extent you can acquire agreement among all,

20   great.  To the extent there's an alternative to which the

21   parties agree and resolve it, one way or the other, you're the

22   one in charge of marshalling the positions.  If there is an

23   agreed form of order even for some, then submit it.  And at the

24   same time, submit a new statement of "Here are the remaining

25   issues," a new joint statement, and here are the positions.

1   And then I can move to what remains in dispute.

2           But that ought to -- we ought to be able to solve

3   this part by agreement, I would think.

4           MS. WOOD:  I will undertake that, and I take that to

5   mean Ms. Baggio is relieved from the Court having her --

6           THE COURT:  On these particular issues.  Since --

7   since you spoke up, since you were speaking with Mr. Barrow on

8   the issues, you take the lead on that, and I'm sure Ms. Baggio

9   wouldn't mind.

10          MS. WOOD:  I'm happy to do that, your Honor.

11          THE COURT:  Thank you.

12          MS. WOOD:  And --

13          THE COURT:  Pardon me?

14          MS. WOOD:  Would you like me to do the same as to the

15  Facebook raw data --

16          THE COURT:  The three items you enumerated while you

17  were on your feet.  You're going to confer --

18          MS. WOOD:  All right.

19          THE COURT:  -- with your members here, and then back

20  with the Government.  And to the extent you can reach agreement

21  that resolves all of it in the form of an order, you'll tender

22  it.  If you reach an agreement that resolves part of it in the

23  form of an order, you'll tender it.

24          And to the extent disputes remain on those three

25  categories, you'll give me a stipulate -- a joint updated

1   discovery chart like this, that says this is still in dispute,

2   here are our positions, we need a ruling.

3         And then I'll decide if I need argument.

4         MS. WOOD:  And, your Honor, could I have leave to get

5   that done by next Friday, the 24th?

6         THE COURT:  Yes.

7         MS. WOOD:  I have other obligations --

8         THE COURT:  That is perfect.  That is your deadline.

9         And so just to be clear, that addresses item No. 1 on

10   the chart.  It's got also this Nevada discovery, item No. 2?

11         MS. WOOD:  Yes, your Honor.

12         THE COURT:  And then there was another --

13         MS. WOOD:  The Facebook, which is on page 7 of the --

14         THE COURT:  And that is by count item No. 7.

15         So in the order I issue today, I'll just make general

16   reference to those items; will be addressed in the manner we've

17   just put on the record.

18         MS. WOOD:  Understood, your Honor.

19         THE COURT:  Thank you, Ms. Woods.

20         Yes, Mr. Mumford.

21         MR. MUMFORD:  Am I to understand that -- by that

22   then, that the Government's certification that their discovery

23   is substantially complete did not include --

24         THE COURT:  Mr. Mumford, you need to talk -- you need

25   to talk to opposing counsel.  I'm not going to go back to that

1    certification question one more time.  You need to do your own

2    due diligence, your own discussion, and your own submission as

3    I have directed.

4            All right.  Let's move to item No. 3 on that chart.

5    It's titled, Large volume of e-mail messages under review as of

6    5-18-16 that Government believes will not be discoverable.

7            I don't know what this means.  So someone needs to

8    tell me what -- what the -- what the subject even means, and

9    then what -- what the positions are.

10           Who can speak to this?

11           Ms. Baggio?  Ms. Wood?

12           MS. WOOD:  Your Honor, we're just basing the large

13   volume of e-mails that the Government thinks is not

14   discoverable on their statement in the status report for

15   discovery that was filed, I believe, on the 16th.

16           THE COURT:  Well, let's ask them --

17           MS. WOOD:  So let's ask them first.

18           THE COURT:  Okay.  What does this mean?

19           MR. BARROW:  Your Honor, the issue was raised by

20   Ms. Wood, so I thought -- that's why I thought she may

21   articulate it better than I did.

22           But my understanding is that this statement about the

23   large volume of e-mail messages under review as of May 18th is

24   it is a reference to a statement that we made in the May 18th

25   status report about things that we were still working on.

1           We certified substantial compliance, but we explained

2    that we believed that our duties were ongoing.  And there were

3    several categories of information that we were continuing to

4    work on.  We have continued to review e-mails, and we've

5    produced e-mails.

6           My understanding is that this report reflects

7    something different.  And that's a request to disclose the

8    agencies and the positions and the authors and recipients of

9    e-mails.  And -- and --

10          THE COURT:  I'm confused.

11          You're saying e-mails have been produced.

12          MR. BARROW:  Correct.

13          THE COURT:  And your understanding that the

14   defendants are asking for you to identify who the author or the

15   recipient is on these various e-mails?  Is that what we're

16   getting at?

17          MR. BARROW:  My understanding is that the defense is

18   alluding to the fact that we noted there were a lot of e-mails

19   in the case.  We, in that report, talked about reviewing them

20   and producing the e-mails that are discoverable.

21          My understanding of this issue is they're asking us

22   to take a look at the e-mails that we don't believe are

23   discoverable, and providing some identification regarding those

24   e-mails.  Perhaps which agency generated the e-mails, who the

25   senders and receivers are.  But I don't have a better

1    understanding of that issue than I just said.

2           THE COURT:  Then let me hear from you, Ms. Wood.

3    What is he getting at?  What are you concerned about?

4           MS. WOOD:  Well, your Honor, our concern, as the

5    Court can see from the various motions to compel production of

6    discovery, is that the defense maintains that certain discovery

7    that we know exists –– because we've seen bits and pieces or

8    suggestions of it in discovery –– the Government –– we say it's

9    material; we need it under Rule 16; we need it material to our

10   defense; we need it under **Brady**.  And the Government says, No,

11   we don't agree.  It's not material.

12          And so that's our concern.  If the Government has

13   e-mails and they're going to decide they're not discoverable ––

14   well, they're in their possession and control.  If we don't

15   have at least some understanding of what they're claiming isn't

16   discoverable, we're not in a position ––

17          THE COURT:  Can you give me any authority at all,

18   Ms. Wood, for the proposition that a district judge is supposed

19   to require the Government to itemize evidence it determines is

20   not discoverable, like it does happen on the civil side ––

21          (Defendant Cavalier exiting courtroom.)

22          THE COURT –– and a privilege log, or something on

23   that order?  Do you have any authority under Rule 16 of that

24   obligation?

25          MS. WOOD:  Your Honor, the only thing I'm trying to

1    do is to make an informed decision as to whether we should be

2    asking the Court to conduct in-camera review --

3                THE COURT:  Right.

4                MS. WOOD:  -- of information that would otherwise --

5                THE COURT:  As -- as reflected, this issue is not

6    ripe for me to take any more time on.

7                MS. WOOD:  Correct.

8                THE COURT:  I'm adding it to your list.

9                MS. WOOD:  Fine.

10               THE COURT:  Because you're the one -- the

11   spokesperson on it.

12               To the extent you -- you, on behalf of your client or

13   generally on behalf of other defendants, believe there is a

14   discovery dispute in this area, continue your conferral.  If

15   you can resolve it, let me know.  If you can't, give me a more

16   precise articulation of what the issues are and the positions,

17   so that I can rule on them.

18               MS. WOOD:  We'll do that, your Honor.

19               And I've spoken with Mr. Barrow, and it's -- one

20   problem has been the crush of time on all parties.  And so it

21   has limited what normally would be a more thorough discourse

22   and resolution.

23               We just -- the Court asked to be alerted, and that's

24   really what we intended the do here, is alert the Court.

25               THE COURT:  All right.  And from alert, now we're

1  going into substance.  And can you do this also by the 24th?

2  Include it with the discussion?  And if you can't, you can ask

3  for more time.

4          MS. WOOD:  I will do that, your Honor.  And perhaps

5  at least one other person on the defense team will decide to

6  help with some of these issues, so --

7          THE COURT:  You can pick a delegate to help you.

8          (Defendant Cavalier reentering courtroom.)

9          THE COURT:  Thank you.

10         All right.  Let's move to item No. 4.  There's been

11  now a motion filed regarding item No. 4.  So I want to know

12  what the Government's expectation is regarding a response.

13         Just the regular round 2 motion?

14         MR. BARROW:  Yeah, your Honor.  I would ask that they

15  be set with that, in the regular course.

16         THE COURT:  It seems to me the argument is

17  articulable pretty concisely and should be made way sooner than

18  weeks from now because it's an important issue.  It needs to

19  get articulated.

20         Can -- can you file a response to the discoverability

21  issue?  A response to that motion by this Friday?  The argument

22  is, is it discoverable or not?  It's a straightforward

23  argument.

24         MR. BARROW:  We can do that, your Honor.

25         THE COURT:  And on this one, who's the filing lawyer

1    on this one?

2              Yes, Mr. Olson.

3              MR. OLSON:  Yes, your Honor.

4              THE COURT:  If the Government files a response

5    Friday, can you file a reply by next Wednesday?

6              I would like to look at the written record first

7    before I decide whether we need to redeem everyone for oral

8    argument.

9              MR. OLSON:  Yes, your Honor.

10             THE COURT:  Okay.  So that will be the briefing

11   schedule for that issue.

12             Item 5 is also the subject of a motion.

13             So I need a response and a reply deadline here.  This

14   one, I think, is not quite as straightforward, although it --

15   again, the Government's principle is -- is articulated in

16   the -- in this and the other report.

17             On the one hand, it seems to me that if -- if the

18   argument defendants want to develop is that they were justified

19   in carrying firearms during the occupation because of their

20   concerns regarding law enforcement and federal agent response

21   with the use of force, that relevance exists when the

22   occupation -- as you've all called it -- began.

23             And whatever the defendants saw or observed regarding

24   the potential for law enforcement force was what they saw or

25   observed.  The defendants know what they know.  The defendants

1    know what they saw.  The defendants know what they were seeing

2    in media about what the response was going to be.

3            So the idea that the Government has to provide

4    discovery around this is -- is an issue I'm having trouble

5    with.  So what I would like is a Government's response and a

6    brief in reply.  And, in theory, it would be nicer if we could

7    do it sooner rather than later.

8            MR. BARROW:  We can respond --

9            THE COURT:  I know it's Wednesday.  When can you do

10   it?

11           MR. BARROW:  Let's put it on Friday.

12           THE COURT:  All right.  And then, Mr. Olson, are

13   you -- no, this is Ms. Wood.

14           MS. WOOD:  That's mine, your Honor.

15           THE COURT:  Okay.  Can you do a reply then, too?

16           MS. WOOD:  I am in Medford Monday and Tuesday, so I

17   would like to have until Friday, the 24th --

18           THE COURT:  You are doing a lot.  Do you want until

19   the following Monday?

20           MS. WOOD:  That would be -- that would be good.

21           THE COURT:  In which case you can file your

22   opposition this coming Monday.  Because Ms. Wood is going to be

23   busy anyway.  All right?  So you file the opposition on -- on

24   this show-of-force display issue by Monday, next.

25           And then, Ms. Wood, your reply will be the Monday

1    after.  I want to review the arguments before I decide whether

2    we have to have oral argument on that one.

3              MS. WOOD:  Fine, your Honor.

4              THE COURT:  All right.  Now, the item 6 on the chart,

5    information related to witness identification practice and

6    procedure.  It seemed to me the Government should be doing a

7    search to ensure that it has produced all the photographs that

8    were used in connection with identifications.  That would seem

9    to me discoverable.

10             So if the Government searches and then produces all

11   of the photos that it used in -- its agents used in the course

12   of identification, that would go a long way to resolving this.

13             If the Government says we've searched, we've

14   identified this universe of photographs, we've produced all

15   that we have but there is a subset of that universe we don't

16   have anymore and we can't produce it because no record was kept

17   of them, then that would be a certification that they've done a

18   search; that they've produced that which was discoverable.

19             So I'm inclined to simply direct the Government to

20   ensure by the representation of an officer of the court in the

21   record that a diligent search was made; that all the photos

22   used in identifying a witness in the course of the

23   investigation have been produced or at least identified.  Of

24   those identified, the subset that don't exist anymore are

25   identified, too.  And we don't have them, or why, or whatever.

1  An explanation of what the state of the discovery is.  And that

2  the remainder have been produced.  It seems to me that would

3  solve the problem.

4          But am I missing something, first, from the

5  defendants' perspective?

6          Who's speaking on -- yes.

7          MS. HARRIS:  Good morning, your Honor.

8          THE COURT:  Counsel.

9          MS. HARRIS:  I don't have too much to add.  I think

10  the Court has accurately summarized our position.

11          One -- I do think that the certification should

12  include some kind of explanation of, you know, sort of what --

13  what happened; what's missing and what happened to it.

14          THE COURT:  Right.

15          MS. HARRIS:  But I also think, though, that we're in

16  a -- sort of an unusual position in that so many of our

17  clients' images and likenesses were broadcast very widely

18  before they were interviewed by law enforcement agents.  And so

19  this is kind of an important and evolving issue.

20          We are in the position of having to rely exclusively

21  on the Government's report to know whether witnesses were even

22  shown a photograph.

23          THE COURT:  Right.

24          MS. HARRIS:  And so I do think that the certification

25  should include -- or should apply to sort of all witness

1    interviews.  The agents are in the best position to know

2    whether or not photographs were made a part of the interview

3    process.

4              THE COURT:  Well, what I'm contemplating -- tell me,

5    Ms. Harris, if I'm not addressing your point.

6              It seems to me the Government should be able to say

7    after, again, checking in with all of the witnesses, what

8    photos were displayed for identification purposes.

9              Report back to me what were displayed, and where are

10   they?  Show the photos.  And if they don't have them and can't

11   document them, explain:  I can't, I don't have it, I didn't

12   keep a record, whatever.

13             Is that what you're saying?

14             MS. HARRIS:  Yes.  And also relevant to the beginning

15   of these proceedings, because some of these photographs have

16   been identified and the Government has said, Thank you for

17   identifying those, we will produce them, we don't have them

18   yet.  Should some of those photographs -- and I'm thinking of

19   my client in particular.  Should some of those photographs,

20   upon production, give rise to a motion to suppress, I would

21   request leave of the Court to file that motion if appropriate

22   at that time.

23             THE COURT:  I'll include in today's order omnibus

24   language to that effect.

25             If -- you know, the Government's position is they

1    made substantial -- they -- they produced substantially the

2    discovery, and yet the point is made that it's still

3    continuing.  You can't be required to make a motion on

4    something you didn't have.  We'll have something on that

5    ground.

6            Now, Mr. Barrow, to the solution I'm proposing, is

7    there a problem?

8            MR. BARROW:  No, your Honor.

9            I believe we -- I have attempted to make that

10   certification in court today, but the defense suggested we have

11   until June 30th.

12           I can double our, you know, checks and endeavor to

13   make sure there are no errors in that certification.  And I

14   would ask that we be allowed to --

15           THE COURT:  All right.  What I would like you to do,

16   Ms. Harris, is to continue to confer on this line with

17   Mr. Barrow, to ensure you're on the same page.  But that will

18   be the resolution of this issue, unless you tell me before

19   June 30 that there is a problem --

20           MS. HARRIS:  Thank you.

21           THE COURT:  -- in a joint submission.

22           MS. HARRIS:  Okay.  Thank you.

23           THE COURT:  Mr. Bundy, I have an electronic message

24   from Ms. Boyer that it does not appear Judge Jones's chambers

25   is in session today.  There's no one there.

1          DEFENDANT RYAN BUNDY:  Okay.

2          THE COURT:  So there's not any more I can do about

3    that particular issue.

4          DEFENDANT RYAN BUNDY:  You have the authority to --

5          THE COURT:  I'm not going to release you, sir, for

6    the purpose of going to the Ninth Circuit because you did not

7    seek from the Ninth Circuit even an effort to be there.

8          So we're not going to deal with it here.

9          DEFENDANT RYAN BUNDY:  I have sought an effort,

10   though.

11         THE COURT:  Well, I'm not in a position to have

12   jurisdiction over the matter.  So your motion, if addressed to

13   me, for release to the Ninth Circuit is denied for the reasons

14   I've already stated.  But I'm just telling you, passing on the

15   message, Judge Jones is not there.  So go ahead and take a

16   seat, please.

17         MS. SHERTZ:  Your Honor, if I may -- it's certainly

18   not my issue.  I don't mean to complicate things.  But I was on

19   autopilot when I came to court, and stopped at 10, and he was

20   on the bench.  So --

21         THE COURT:  They are not on the docket, so I can't --

22   I can't --

23         MS. SHERTZ:  I was just trying to share some extra

24   information --

25         THE COURT:  All right.  So, Ms. Ludwig, if you can

1  reach them when we can't, you may.  But I'm simply passing on

2  what I know.  And I know you have to leave.

3        MS. LUDWIG:  May I be excused to go see if -- to

4  interact with Judge Jones's staff in person?

5        THE COURT:  Yes.  You may.  You may.

6        And Mr. Bundy, you're doing fine on your own.

7        (Laughter.)

8        THE COURT:  No offense, Ms. Ludwig.  She's doing

9  fine, too.

10        (Ms. Ludwig exits courtroom.)

11        THE COURT:  Okay.  Can we get back to what we were

12  working on, which is -- I think I've just resolved a mechanism

13  for item 6.  Item 7 was the Facebook issue.

14        Now I need to be told about item 8.  Someone needs to

15  tell me what this so-called Guardian database is and what it

16  is -- how the issue arises.  The response --

17        Can -- can I have quiet, please.

18        The response that the Government reflected about not

19  being aware is not a sufficient response in any event because

20  it doesn't represent a certification that information has been

21  sought and does not exist.  So I want to know what the problem

22  is.

23        But you need to start at the beginning, please,

24  Mr. Kohlmetz.

25        MR. KOHLMETZ:  Your Honor, I agreed yesterday to

1    assist Ms. Baggio in this.  And so I've done a little bit of

2    research.  It is kind of an evolving issue.  But let me just

3    explain.

4           The Guardian and eGuardian database, as I understand

5    it from publicly filed documents that are available online, the

6    Guardian program is an FBI information, investigatory sharing

7    program.  It shares law enforcement investigatory information

8    between local, state, and federal law enforcement agencies.

9           The -- there's two components.  There is an internal

10   FBI network called Guardian, and then there's the broader

11   multi-jurisdictional network called eGuardian.  So when I refer

12   to Guardian, I'm referring to both.

13          The -- the system is designed to collect a wide

14   variety of information from all local, state, regional, and

15   even private sources.

16          THE COURT:  And you're saying who has access to this?

17          MR. KOHLMETZ:  The FBI, your Honor.

18          In the discovery, there have been repeated

19   references, particularly when noting interviews of subjects.

20   In the applications for search warrants and in the application

21   for court orders, there have been references to information

22   contained in the Guardian database as well as other databases

23   that I'll get to in a minute.

24          There are also references in the general

25   investigation to checking the Guardian database for information

1   related to this person, or this place, or this activity.

2           The databases, in addition to Guardian, that we would

3   be seeking, one was already mentioned by Ms. Baggio, which was

4   the DIVS, which is the data inventory -- give me one minute,

5   your Honor.  And visual -- Data Inventory and Visualization

6   Database, which is maintained also by FBI.

7           It interacts with and is designed to scoop up

8   electronic information primarily under FISA, but it also has

9   been broadened and -- to nonterrorist-related electronic

10  surveillance.  The FBI has access to that system as well.

11          The third critical one that I seek is also ORION,

12  which is another FBI database.  It is the Operational Response

13  and Investigative Online Network.

14          THE COURT:  With respect to the databases you're

15  describing, and others, what is it you're seeking from the

16  Government as to which a dispute has arisen?

17          MR. KOHLMETZ:  Your Honor, it's clear from the

18  discovery that information contained in these databases was

19  utilized, was referenced both in the general investigation and

20  in factual assertions made in support of affidavits and

21  application for search warrants and orders.  These databases

22  are incredibly comprehensive and incredibly powerful in

23  amalgamating information and are term searchable.  It is clear

24  to me that the FBI has repeatedly term searched these databases

25  during the investigation of these defendants.

1           THE COURT:  What is it -- what is it --

2           MR. KOHLMETZ:  I'm asking the Government term search

3   these databases for all of these defendants, the -- the -- the

4   Government witnesses that they -- as they are identified, and

5   any human sources of information to ensure that we have --

6           THE COURT:  You're going to have to file a motion on

7   this, a specific --

8           MR. KOHLMETZ:  And Mr. Barrow has told me that.  You

9   asked for information, so --

10          THE COURT:  Oh, no.  I thought I was going to be able

11  to work through this to some direction and get it resolved.

12  It's clear this is a substantive and complicated matter.  The

13  motion needs to get conferred, filed after complete conferral.

14          MR. KOHLMETZ:  Yes.

15          THE COURT:  You need to narrow the dispute as best

16  you can, and then file a motion and a response.

17          When can you file your motion?

18          MR. KOHLMETZ:  Not by this Friday.  By Friday next.

19          THE COURT:  June 24.  Yes, that will be your motion

20  deadline.

21          And a response one week, July 1.

22          MR. BARROW:  That will be fine, your Honor.

23          MR. KOHLMETZ:  Mr. Barrow will be my conferral point

24  on that.

25          THE COURT:  Yes.  And then once I see the motion and

1    the response, I'll determine if a reply is needed or if we just

2    go right to argument.  All right?

3              MR. KOHLMETZ:  Thank you, your Honor.

4              THE COURT:  Item No. 8, then, is covered that way.

5    Item No. 9 is database collection on defendants' and Government

6    witnesses if relevant material.

7              Is this the same issue?

8              MR. KOHLMETZ:  That's the same issue, your Honor.

9              THE COURT:  All right.  Thank you.

10             And then nonTitle III FISA monitoring and

11   communications, is that the same?  Or is that something else?

12             MS. BAGGIO:  Your Honor, this one is mine, and this

13   is something else.

14             THE COURT:  Okay.

15             MS. BAGGIO:  Your Honor, I have made a request.  My

16   initial request was on May 20th.  But then, again, a separate

17   one on June 9th, for the Government to disclose to us whether

18   the -- the investigation involved warrantless monitoring.  And

19   I have provided a letter explaining the basis for my request,

20   to the Government.

21             And our position is that if the Government utilized

22   warrantless monitoring based perhaps on a theory that the

23   defendants did not have an expectation of privacy while they

24   were within the refuge buildings, that we're entitled to any

25   communications under Rule 16; any statements by the defendants

1    that were seized or obtained during the occupation.

2              THE COURT:  Give me an example, would you, please.

3              MS. BAGGIO:  Thank you, your Honor.

4              For example, what -- what we understand the

5    Government is able to do is use a computer or a telephone and

6    turn on a listening device.  Or another example would be based

7    on the discovery received and reviewed by me in this case, the

8    Government seemed to have known that it was a possibility that

9    this was going to take place.  If that is true --

10             THE COURT:  "This" being --

11             MS. BAGGIO:  The -- the -- the entry into the

12   buildings.  I'm sorry, your Honor.  The entry into the

13   buildings.  And if that is true and the Government placed

14   listening devices within the refuge or had them there already

15   for security purposes but turned them on to listen to what --

16             THE COURT:  So you're trying to find out, for

17   example, if there was a nonTitle III or nonwarrant-based

18   listening device used by the Government, thus, in the

19   investigation as the facts were developing, and that kind of

20   thing?

21             MS. BAGGIO:  That is correct, your Honor.  And we

22   believe that it's discoverable under Rule 16, but I would also

23   submit that it's even discoverable moreover to my client,

24   Mr. O'Shaughnessy, because of the information we know that the

25   discussions that took place on the refuge, when he visited

1    there, would have been exculpatory in nature.

2          THE COURT:  Let me hear what the Government's

3    perspective is on this.

4          MR. BARROW:  Your Honor, I didn't understand the

5    request when it came in.  And I had a conversation with

6    Ms. Baggio, and she gave me the following example.

7          She believed that after leaving the courthouse, on

8    one of the occasions, she was followed closely by someone.  And

9    that that was an example of nonTitle III interceptions.

10         What I told her -- and what we represent -- is that

11   any defendant statements that are discoverable under Rule 16

12   will be produced.  And we've produced many such statements.

13         They exist in many forms.  For example, if the

14   defendants broadcast from YouTube, and we've obtained it from

15   the Internet, we have produced that in discovery.  So in every

16   instance that I'm aware of, that we have a defendant's

17   statement, we've produced it under Rule 16.  If we find out

18   tomorrow another example of a defendant's statement that comes

19   in from any form, we'll produce it.

20         So in our response -- you know, I was trying to

21   allude to the fact that we think we've complied with that

22   request.  And I'm not aware of any statements that we haven't

23   produced.  And, again, in this -- just the very nature of

24   this -- this case, we'll continue to look for them and produce

25   them when they're available.

1              But the notion that there was some exotic mechanism

2    for collecting information, it just isn't -- it isn't accurate.

3              THE COURT:  Then it seems to me that the Government

4    should be able to do what you've been directed to do on some

5    other items this morning.  Make a thorough review of -- through

6    your agents, and otherwise, to ensure there are not existing

7    recordings or other interceptions that are nonTitle III-based,

8    nonwarrant-based, and then make a certification as an officer

9    of the Court that there aren't any other statements of any

10   defendant that have not been produced.  It seems to me you

11   should be able to do that.

12             Would that address the issue?

13             MS. BAGGIO:  It would, your Honor.  Thank you.  And

14   just -- the Government responded with regard to someone

15   following me.  That was my first request.  The Government

16   responded, That didn't happen.  I'm not following up on that,

17   your Honor.  I'm referring, from Mr. Barrow's reference, to the

18   subsequent letter of June 9th, that detailed these other

19   reasons why we have concerns about monitoring.

20             THE COURT:  And the reasons you have concern are

21   you're thinking it's possible, but you don't have evidence that

22   it happened?

23             MS. BAGGIO:  That is correct, your Honor.  That is

24   correct.

25             THE COURT:  So with the example counsel cited today,

1    and the example in her letter of June 9th, I want the

2    Government to go back and to confer with all of the relevant

3    agents to ensure there is not existing any other collection or

4    record of a statement of the defendant in the possession of the

5    Government or its agents here, and then so certify.

6              Can you do that by the 24th?

7              MR. BARROW:  Your Honor, we would ask for a little

8    more time on that because of the complexity of that issue.

9              THE COURT:  All right.  July 1.

10             MR. BARROW:  That will do, your Honor.

11             I want to raise the possibility, however, that on

12   July 3rd, someone posts something to the Internet that we can

13   collect --

14             THE COURT:  Well, Counsel, you know how to certify a

15   true statement.  It's true through the date it's made.  And you

16   continue to say, as you have, that to the extent there is new

17   information that comes to the Government's attention,

18   notwithstanding the Government's best efforts, whether it

19   preexisted or not, if you become aware of it, you will have to

20   disclose it.

21             MR. BARROW:  We will, your Honor.  Thank you.

22             MR. MUMFORD:  Your Honor, may I --

23             THE COURT:  Yes, you may.

24             MR. MUMFORD:  May I just address -- I'm trying to be

25   helpful here.  But it seems to me that these -- the issues that

1    we're -- we're talking about are -- are both whether attempts

2    were made, whether evidence was collected under these -- these

3    different things.  And I would just ask -- I think that I hear

4    our defense side saying, We want to know, first of all, whether

5    the defense -- whether the attempts were made to collect

6    information under this, and whether there is any responsive

7    information that should be produced under Rule 16.  So I would

8    ask that the certification in that respect cover -- cover both

9    of those.

10            THE COURT:  You may confer with counsel about that

11    first.

12            MR. MUMFORD:  Okay.

13            THE COURT:  Right now the order goes to looking into

14    that which exists, as opposed to that which might have existed

15    but doesn't exist.

16            All right.  Item 11, then.  Information regarding

17    informants, undercover agents, provocateur, et cetera.

18            The Government said it would produce reports

19    regarding this information no later than July 1.  I assume

20    that's acceptable to the defense, and you'll let me know if

21    there's an issue beyond that.  Or no?

22            MS. BAGGIO:  Your Honor, I read the response to say

23    that it's just related to confidential sources.  And with the

24    Court's intent to issue the omnibus ruling, that we'll be able

25    to raise subsequent motions, based on subsequently disclosed

1    evidence.  That's fine.

2         But I do also believe that there's a separate

3    question about the use of media sources, as well as the agent

4    provocateur.

5         THE COURT:  All right.  Then you all need to confer

6    some more about this.  All right?

7         If there's an issue, you need to give me an updated

8    joint statement by next Friday, June 24, on this issue 11.

9         If -- confer, get more specific.

10        If there's a problem you can't resolve by agreement,

11   then tell me and I'll make a ruling or I'll get you back for

12   more detail on it.

13        MS. BAGGIO:  On June 24th that's due?

14        THE COURT:  Yes.

15        MS. BAGGIO:  Thank you.

16        THE COURT:  Okay.  Item 12 is called "propaganda."

17        I don't know what this issue is.  So, Ms. Baggio,

18   maybe you can tell me what the issue is, and then I'll hear

19   what the Government's issue is.

20        MS. BAGGIO:  May I just have a moment to write down

21   what you said about the last --

22        THE COURT:  Of course.  And we'll try to issue an

23   order, hopefully today or tomorrow, to confirm dates.

24        MS. BAGGIO:  Your Honor, the last request is based on

25   publicly released e-mails through Governor Brown's office that

1    include FBI e-mails referring to efforts to grab and own social

2    media.

3            And our perspective is that this is discoverable

4    for -- on multiple levels.  But we believe it's material and

5    relevant to the defense in general.  But we also believe it's

6    relevant to the defendants to be able to raise and supplement

7    the record as to a motion for change of venue because if the

8    Government is trying to affect public perception of events as

9    they're happening, that would be relevant to the way the public

10   receives information about those events.

11           So that's the basis for the request, your Honor.

12           THE COURT:  Why does the Government say it doesn't

13   believe this is information that's discoverable?

14           MR. BARROW:  Your Honor, I first heard of this issue

15   yesterday, and I talked to Ms. Baggio about it for the very

16   first time yesterday.

17           I don't precisely know what she's referring to.  She

18   referred to the same e-mail she just described.  I have not

19   seen that e-mail.  My understanding is that is an e-mail --

20           THE COURT:  Then I'm directing you to continue

21   conferral on that.  The same deadlines I just set up for the

22   last issue, item 11, apply here.  More conferral.  If there's

23   an issue, then I need to know about it.  But you're obviously

24   not ready to go there.

25           I want to turn now to the list of what's called

1   uncontested but unproduced discovery.

2          Who's -- who's speaking to these things?  It looks

3   like basically what are needed here are deadlines for the

4   Government to produce that which is allegedly uncontested.

5          Ms. Harris, is that you?  Or, Ms. Baggio, is that

6   you?

7          MS. BAGGIO:  I'll be glad to represent on this one,

8   your Honor.

9          THE COURT:  All right.

10         MS. BAGGIO:  This was my best effort to just record

11  items that I understood the Government has just said, We

12  haven't got them to you yet, but we're not fighting you as to

13  whether or not we're going to produce them.

14         THE COURT:  But you want a deadline?

15         MS. BAGGIO:  That is correct.

16         MR. BARROW:  Your Honor, I'm sorry.  We have

17  articulated our best estimate and when we could comply with

18  that; in each of these individual issues.  There are a couple

19  of issues in this list that -- for example, the first one, I

20  believe, is an issue that Ms. Wood has raised that I don't

21  believe involves what the Government has provided.  I'm not

22  entirely sure about that.

23         But if we go through the list below that, images of

24  digital media, some of that raises the same issue that we

25  talked about at the beginning of the hearing.

1          THE COURT:  Right.  Right.

2          MR. BARROW:  In terms of the big categories here that

3    we are trying to get out the door, that involves really the

4    forensic reports from digital media and the forensic reports

5    from the Facebook searches.  And we've talked about trying to

6    make those available within a week.

7          THE COURT:  Ms. Wood, let me ask that when you're

8    conferring and working up to narrow the issues assigned from

9    the disputed list you notify me if anything that's called

10   uncontested actually is contested and has to be taken into the

11   reports you're making there.

12         In other words, there is some overlap here, and I'm

13   not clear what it is people are asking me to rule on today.

14         I'm going to set a deadline with respect to dates,

15   where the Government's promising production but hasn't yet, so

16   that we just get the matter moving.  And I'm going to say July

17   1.

18         And -- and, again, the order from today will indicate

19   that with respect to new matter about which the parties didn't

20   know -- defendants particularly -- then you have leave to seek

21   leave to file another motion, despite the deadlines already

22   set.

23         So I think that should take us through the discovery

24   report, unless there's something else someone wants to raise on

25   discovery before we move on to other issues.

1          MS. WOOD:  Your Honor, I just want to ask if in lieu

2    of the discovery committee filing a report next Wednesday

3    saying we're going to tell you all of this stuff on the 24th,

4    if we could just have the 24th --

5          THE COURT:  That was an idle threat.  That is not

6    being acted on just now.

7          (Laughter.)

8          MS. WOOD:  All right.  Thank you.

9          THE COURT:  -- since you've been assigned a specific

10   task.

11         But what I can't have happen is the next time we have

12   a status conference that I hear for the first time that there

13   are 12 significant disputed issues.  That cannot happen.

14         If there are problems, I need to know about them long

15   before next July's hearing.  So I -- I think most of these

16   issues are coming under your -- your auspices here.  But if

17   there are any discovery issues -- any that any party has a

18   problem with -- let me know.  You're free to file a joint

19   statement after conferral that says you need a ruling.

20         Let me know, and I'll rule on it.  It doesn't have to

21   wait now until the status report, so --

22         MS. WOOD:  And, your Honor, just so the Court

23   understands -- and I'm sure you read through the supplemental

24   information --

25         THE COURT:  Yes.

1          MS. WOOD:  -- part of it is just there hasn't been

2    enough hours in the day for us to review and identify issues.

3    And so --

4          THE COURT:  And I'll just respond to that, that

5    I'm -- I'm pushing us all hard because I respect the rights

6    asserted by the parties to a speedy trial and a fair trial.

7    And we're all human.  We're doing the very best we can on many

8    fronts.  I want to continue to commend all counsel for these

9    hard efforts, but that doesn't mean it can't be done.  Just

10   because the record includes a lot of material doesn't mean

11   every digit has to be reviewed by every lawyer.

12         The people who were there know what happened.  They

13   know what they saw, they know what they heard, and they know

14   what to look for.  And you're doing a great job thinking beyond

15   the box and trying to get the Government to either disclose

16   that there's more that you haven't thought of or assure you

17   that it doesn't exist.  But, in the end, it's not as if the

18   parties don't know fundamentally what happened.

19         The real question ultimately is what does it amount

20   to legally.  Was there an illegal conspiracy?  Or was it the

21   exercise of a First Amendment and a Second Amendment right as

22   you've all been telling me?  That will be decided, ultimately,

23   by a jury.  So let's just keep working forward.

24         MS. WOOD:  We'll do that, your Honor.  But I'm sure

25   the Court knows -- that I've learned over 35 years of

1    experience -- is that defense counsel can't just rely on what

2    their clients remember about events and --

3            THE COURT:  I know.  And you're working as a team and

4    you're coming up with ideas as a group that you wouldn't have

5    individually.  That's to be commended.  And I also note that

6    you have and your client have opted out of the September 7th

7    trial date.  So --

8            MS. WOOD:  (Nods head.)

9            THE COURT:  -- the decision was made; you move on.

10           MS. WOOD:  Thank you.

11           THE COURT:  All right.  I want to take about a

12   ten-minute recess because I want to go back and, on my own, get

13   some dates for recitation back to you.  And I just want to have

14   a -- the opportunity to review my notes, and do it in the

15   context of a chronology.

16           So for about ten minutes, we'll be in recess, and

17   then I'll be back.

18           (Recess taken.)

19           THE COURT:  Thank you, everyone.  Please be seated.

20           I have a couple more agenda items, and then I'll go

21   back and review a few dates.  And then we'll adjourn the public

22   session, and I would like to meet with defendants and counsel

23   ex parte.

24           Ms. Ludwig, you were able to connect with Judge

25   Jones?

1          MS. LUDWIG:  In a manner of speaking, your Honor.  I
2   saw him.  I spoke with Becky.  They took down my phone number
3   and indicated they would get back to us as to whether a hearing
4   can take place today.
5          THE COURT:  All right.  So at least you made that
6   connection.
7          MS. LUDWIG:  Sort of, yes.
8          THE COURT:  All right.  That's all we know then.
9          DEFENDANT RYAN BUNDY:  So, okay, before we finish
10   here, I do have a few administrative questions and a few points
11   of clarification.  I don't know if you want to go through those
12   now or towards the end.
13          THE COURT:  Go ahead now.
14          DEFENDANT RYAN BUNDY:  Okay.  First of all,
15   concerning the OS [sic] OIG investigation on the LaVoy Finicum
16   shooting, I did not have a schedule here before me until now.
17   I had to borrow one from Amy Baggio.  But I want to make sure
18   that that's made a matter of record, that this be brought up.
19   This is a very important issue.
20          THE COURT:  There's a motion, there's an opposition.
21   There will be a reply.  I'll review it.  I'll decide if oral
22   argument is warranted.  If it is, I'll convene it.  If it is
23   not, I'll rule on the record.
24          DEFENDANT RYAN BUNDY:  Okay.  Thank you.
25          THE COURT:  All right.  So it definitely is part of

1   the record.  It's being briefed.  It's on the to-do list.

2          DEFENDANT RYAN BUNDY:  Okay.  I wanted to make that a

3   matter of clarification because it seemed like it was brushed

4   over too quickly before.

5          THE COURT:  It was only rushed over because we were

6   talking about the benchmarks for getting it in front of me.

7          DEFENDANT RYAN BUNDY:  Okay.  Thank you.

8          THE COURT:  All right.  Go ahead, Mr. Bundy.

9          DEFENDANT RYAN BUNDY:  I have some more

10  administrative questions.

11         Do you understand that I am a living, breathing man,

12  being warehoused in a commercial zone against my will?  And

13  that it is my wish that you restore mind, body, and spirit --

14  which is exempt from liberty -- the liberty to prepare, to

15  defend myself against these three men who come against me?  And

16  that I will return to bring remedy to this matter.  My word is

17  my bond.

18         THE COURT:  I understand you have said that, and it's

19  noted on the record.

20         Go on.  Your next point.

21         DEFENDANT RYAN BUNDY:  Okay.  You mentioned earlier

22  that you do not have authority to release me concerning this

23  going to this hearing on the Ninth Circuit.  Does that also

24  mean you do not have authority to retain me?

25         THE COURT:  You are already retained; that is,

1    detained under an order of the Court.  That's the standing

2    order.  I'm not reviewing it.

3            You know that Judge Jones has agreed to take up

4    motions to review detention as an assistance to the Court, so

5    I'm not going to take up that release issue any further,

6    Mr. Bundy.

7            DEFENDANT RYAN BUNDY:  All right.  Concerning that

8    first question, you said it was noted.

9            Do you have an answer for that question?

10            THE COURT:  I'm not going to take time to answer the

11    question.  It's not in the form of a matter that even rises to

12    the need for the Court to respond.  So you've made your point.

13    It's on the record.  If you think it was error for me not to

14    deal with it, you've got a right to appeal.

15            DEFENDANT RYAN BUNDY:  Okay.  I few other questions,

16    your Honor.

17            THE COURT:  Yes, sir.

18            DEFENDANT RYAN BUNDY:  Is your pension tied in any

19    form or fashion to the multi -- Multnomah County Detention

20    Center?

21            THE COURT:  I'm sorry.  I don't -- I did not

22    understand what you say.  Say that again.  Say that again,

23    please.

24            DEFENDANT RYAN BUNDY:  Is your pension -- let me --

25    your pension, your -- is it tied in any form or fashion to the

1    multi -- Multnomah County Detention Center?

2              THE COURT:  No.

3              DEFENDANT RYAN BUNDY:  Okay.  Have you or your Honor

4    ever received or heard -- received any credits, checks, money

5    orders, or electronic funds transferred from the plaintiff, the

6    United States of America Corporation?

7              THE COURT:  I'm a United States District Judge.  I

8    receive compensation from the United States Government for my

9    service.

10             DEFENDANT RYAN BUNDY:  Okay.  Thank you.

11             Are you aware that the United States Code 18-4001(a)

12   forbids you to hold me without an act of Congress?  Under what

13   act of Congress are you holding me under?

14             THE COURT:  Mr. Bundy, you've been detained by order

15   of the Court.  I'm not going it take up detention issues again,

16   I repeat.

17             Please not -- don't waste everyone's time with

18   matters you know have already been addressed.

19             DEFENDANT RYAN BUNDY:  Okay.  Thank you, your Honor.

20             Are you aware that I have not been provided the

21   original charging instrument?

22             THE COURT:  You received the Superseding Indictment

23   at the arraignment at which I presided.  I'm not going to

24   address that further.

25             DEFENDANT RYAN BUNDY:  Okay.  Do the U.S. Attorneys

1    have an -- an obligation to mediate prior to court -- to a

2    court date?

3                THE COURT:  Say that again.

4                DEFENDANT RYAN BUNDY:  Do the U.S. Attorneys have an

5    obligation to mediate prior to a court date?

6                THE COURT:  In a criminal matter, no.

7                They have the obligation to follow my orders,

8    however, with respect to conferral on issues before they're

9    presented to the Court, as a matter of the Court's exercise of

10   its inherent authority to manage a case.

11               DEFENDANT RYAN BUNDY:  Okay.  They don't have an

12   obligation to --

13               THE COURT:  They do not.

14               DEFENDANT RYAN BUNDY:  Okay.  Are you aware that the

15   three U.S. attorneys have not provided me with the required

16   elements of the case, such as -- to name a few -- the grand

17   jury roll call, the grand jury roll call of my Indictment, the

18   record of the grand jury proceedings?  And I require these

19   documents, or I will not be able to prepare my -- my defense.

20               THE COURT:  You made a motion about grand jury

21   records on which I ruled.  There isn't any pending issue before

22   me.

23               DEFENDANT RYAN BUNDY:  Okay.  Are you aware that I

24   cannot form a defense, plea, or seek any legal assistance until

25   I see the original of the following:  An affidavit of probable

1    cause required by the Fourth Amendment; a certified copy of the

2    statute for codes they're charging me under; a certified copy

3    of the session and laws recorded and -- that create the statute

4    and code?

5            THE COURT:  Mr. Bundy, if you have motions for

6    production, you may make them.  I'm not going to take the

7    parties' time going through these exercises.

8            You've been properly arraigned, you've been provided

9    with the charging instrument, you've had your release reviewed.

10   You're detained.  We're not going to go over these matters

11   again.

12           Do you have something new to raise?

13           DEFENDANT RYAN BUNDY:  Sure.

14           Are you aware that a man entered a plea on my behalf

15   without power of attorney and while practicing law, from the

16   bench, that the plea is not valid -- this plea is not valid,

17   and therefore, there is no plea entered?

18           THE COURT:  Mr. Bundy, a not guilty plea was entered

19   on your behalf.  It is valid.

20           DEFENDANT RYAN BUNDY:  It was not entered by me, your

21   Honor.

22           THE COURT:  It was entered by the Court.  Because if

23   you don't plead guilty, you plead not guilty.  That's the rule

24   of law.

25           So you are not guilty.  You're presumed innocent,

1    like all of the co-defendants, until and unless that

2    presumption is overcome in a public trial by jury; which, as

3    you know, I'm working really hard to get us to.

4            DEFENDANT RYAN BUNDY:  Okay.  All right.

5            THE COURT:  Anything else?

6            DEFENDANT RYAN BUNDY:  No.  Thank you, your Honor.

7            THE COURT:  You're welcome.

8            Mr. Medenbach had a matter to raise.

9            DEFENDANT MEDENBACH:  Yes, your Honor.  I have couple

10   of documents I would like to give to the Government and

11   yourself to review.

12           THE COURT:  I'm sorry.  You need to speak slower and

13   louder, please.

14           DEFENDANT MEDENBACH:  I have a couple of documents

15   here I would like to have you and the Government review for

16   just a moment.

17           THE COURT:  What are they, please?

18           MR. SALISBURY:  May I approach, your Honor?

19           THE COURT:  Yes, you may, Counsel.  Thank you.

20           DEFENDANT MEDENBACH:  I have not made these arguments

21   before.

22           THE COURT:  Somehow that doesn't surprise me,

23   Mr. Medenbach.

24           We'll take a look and see what you have, okay?

25           DEFENDANT MEDENBACH:  Okay.

1          THE COURT:  Okay.  Well, this is pretty easy to deal

2     with, Mr. Medenbach.  These are two copies of an oath in

3     different forms.  You've been making arguments about my oath.

4     I'm not going to take up the arguments, but I will mark these

5     for the record.  We'll put them into evidence.  They'll be

6     there before the Court of Appeals, when you want to raise the

7     issue before them.

8          DEFENDANT MEDENBACH:  Sure you don't want to initial

9     it?

10          THE COURT:  Mr. Medenbach, we're not going to play

11     these games.

12          DEFENDANT MEDENBACH:  Okay.

13          THE COURT:  If you want these papers in the record, I

14     will direct the clerk to mark them, they'll be put in the

15     record, and that's all we're going to do on that subject.

16          DEFENDANT MEDENBACH:  Okay.

17          THE COURT:  Is there anything else besides the oath

18     issue you wanted to address?

19          DEFENDANT MEDENBACH:  Nope, that's it.

20          THE COURT:  Okay.  Very good.

21          Now, let me get back to my list.

22          The next status hearing is July 6.  I've adjusted the

23     deadline for waiver of appearances to June 27, which is a

24     little more time than normal because we're this late in this

25     month.  And then the next joint status report will be due June

1    30th.

2              I do want from the Government a current estimate of

3    how long the Government expects the case-in-chief to take,

4    assuming the trial proceeds beginning November 7 against all

5    defendants who have not waived speedy trial rights or who have

6    not taken them out of consideration with guilty pleas.

7              MR. KNIGHT:  Three to four weeks, your Honor.

8              THE COURT:  All right.  That seems to be consistent

9    with what you've been estimating all along.  Is that right?

10             MR. KNIGHT:  Yes, your Honor.

11             THE COURT:  Excuse me.  Mr. Patrick?

12             DEFENDANT PATRICK:  Is there a new date of November

13   7th?

14             THE COURT:  Did I misspeak?  I meant September 7.

15             MR. KOHLMETZ:  Thank you, your Honor.

16             THE COURT:  Crisis narrowly averted.  (Laughter.)

17   Sorry.  September 7 remains the day for jury selection to

18   begin.

19             All right.  I reviewed my notes around all of your

20   calendaring issues.  I don't think it's useful for me to recite

21   what all the schedule is going to be.  I think I have all of

22   the input I need.  I am going to issue an order that confirms

23   what we've covered on the record and sets deadlines based on

24   the feedback that you've given me in these reports, even as to

25   issues we haven't addressed on the record.  And then we'll move

1    forward from there.  So, for my purposes, the proceeding can

2    adjourn in this joint session.

3              I do want, after everyone leaves -- except defendants

4    and their counsel -- to have an ex parte session.  I want to

5    address a couple of matters with defense counsel.  But I need

6    to be sure there's nothing else --

7              Yes, Mr. Barrow.

8              MR. BARROW:  I'm sorry to interrupt, your Honor.  On

9    one of the deadlines we talked about related to discovery,

10   after conferring with my colleagues, I believe we may have

11   overextended ourself a little bit.  That is the issue regarding

12   documents relating to the OIG investigation.

13             We've conferred with Mr. Olson, and we just ask that

14   our response be the 24th and not this coming Friday.  And

15   Mr. Olson indicated that he did not object to that.

16             THE COURT:  And did I set a reply?  Remind me there.

17   So how much -- if we adjust to the 24th, then when --

18             MR. OLSON:  It would be the next Wednesday.

19             THE COURT:  Very good.  We can do that.

20             MR. BARROW:  Thank you.

21             THE COURT:  That will be incorporated.

22             Yes, Mr. Patrick?

23             DEFENDANT PATRICK:  What is the OIG?

24             THE COURT:  The Officer of Inspector General is what

25   they're referring to.  It is the discovery request regarding an

1    investigation of Mr. Finicum's shooting.  That's a discovery

2    issue that's been part of these reports.

3            DEFENDANT PATRICK:  And -- and we're trying to rule

4    whether that's relevant in this case?

5            THE COURT:  The defendants wish discovery of the OIG

6    investigation, and that is an issue the Government contests;

7    under which I'm taking briefing on behalf of all defendants,

8    yes.

9            MR. KOHLMETZ:  Thank you, your Honor.

10           THE COURT:  Okay.  Yes, Mr. Federico.

11           MR. FEDERICO:  Your Honor, the Court had previously

12    directed the parties to provide recommendation on a schedule

13    for the filing of final pretrial papers.  That was in the joint

14    status report.  I'm not sure if that's something the Court --

15           THE COURT:  I was just going to be setting them.  But

16    if you want to give me some input, I'm happy to take it.

17           MR. FEDERICO:  Yes, your Honor.  As we indicate in

18    the status report, the defense position is that the Government

19    file theirs prior to the defendants filing theirs.

20           But the question has also arisen.  I think there are

21    discrepancies -- maybe even local practice -- of what that

22    actually means in terms of filing pretrial papers.

23           And I know we've had discussions with the U.S.

24    Attorney's Office and expressed a preference that particularly

25    witness lists be given as soon as possible.  That will help us

1    in terms of how we efficiently review discovery.  So to the --

2              THE COURT:  Well, this was what I was referring to

3    when I said I was going to -- based on the input you've given

4    me -- make my own orders.  This case is different.  It needs --

5    it needs concerted effort on a timely basis on multiple fronts.

6              And so I'm -- I know what your issue is.  You want to

7    know what the Government's going to offer as soon as they know

8    or as soon as they're willing to commit.  And that can be

9    staged, and I'm likely to require that.

10             MR. FEDERICO:  Thank you.

11             THE COURT:  Counsel knows that it's three to four

12   weeks.  He has an idea what he's basing it on.  Right?

13             MR. KNIGHT:  Roughly, I had --

14             THE COURT:  Okay.  Good.  So soon you'll be able to

15   share that under the Court's guidance.

16             All right.  Other issues for the general session, for

17   everybody?

18             Okay.  With that, then, the Government's excused.

19   All of the members of the public are excused.  The defense

20   parties and counsel must remain.  And then we'll go on the

21   record about that shortly.

22             (Conclusion of proceedings, 11:48 a.m.)

23                            -0-

24

25

1

2

3

4

5                                    --oOo--

6

7    I certify, by signing below, that the foregoing is a correct

8    stenographic transcript of the oral proceedings had in the

9    above-entitled matter this 23rd day of June, 2016.  A

10   transcript without an original signature or conformed signature

11   is not certified.  I further certify that the transcript fees

12   and format comply with those prescribed by the Court and the

13   Judicial Conference of the United States.

14
            /S/ Amanda M. LeGore
15          _____

16           AMANDA M. LeGORE, CSR, RDR, CRR, FCRR, CE
                 CSR No. 15-0433  EXP:  3-31-2018
17

18

19

20

21

22

23

24

25