Lisa Hay
Federal Public Defender
Rich Federico
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon   97204
Tel:    503-326-2123
Fax:    503-326-5524
Email:   lisa_hay@fd.org
         rich_federico@fd.org

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No.:   3:16-CR-00051-BR-4** |
| **vs.** | **DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND PROCEED TO TRIAL BY JURY** |
| **RYAN W. PAYNE,** | |
| **Defendant.** | |

Pursuant to Federal Rule of Criminal Procedure ("Rule") 11(d)(2)(B), defendant Ryan W. Payne, through his attorneys, Lisa Hay and Rich Federico, respectfully moves this Court to permit him to withdraw his plea of guilty and to proceed to a trial by jury.   Mr. Payne is able to show fair and just reasons for the Court to exercise its discretion and permit him withdrawal of his plea.

**CERTIFICATE OF CONFERRAL**: Undersigned counsel conferred with Assistant United States Attorney Craig Gabriel on this motion; the United States objects to the requested relief.

Page 1  **DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND PROCEED TO TRIAL BY JURY**
        *United States v. Ryan W. Payne, 3:16-cr-00051-BR-4*

## RELEVANT FACTS AND PROCEDURAL HISTORY

On March 8, 2016, the government filed a superseding indictment against Mr. Payne, alleging three counts.[1]   Mr. Payne appeared before this Court for status conferences and pretrial hearings on eight separate occasions.

As the Court is aware, during the time he was charged in the District of Oregon, Mr. Payne was also facing prosecution in the District of Nevada (*United States v. Cliven Bundy, et. al., 2:16-cr-00046-GMN-PAL*) for alleged events that occurred in April 2014 in or around Bunkerville, Nevada.   Mr. Payne previously challenged the lawfulness of simultaneous federal prosecutions, on several grounds, and was denied relief by this Court (Doc. 792) and the United States Court of Appeals for the Ninth Circuit (Case. No. 16-30080, Dkt. Entry 49-1).

On July 12, 2016, Mr. Payne received a revised written plea offer from the government. Paragraph 16 of the plea agreement stated that the offer would expire if not accepted by July 13, 2016 at 5:00 pm (Doc. 905).   The plea agreement was verbally accepted prior to that deadline and signed the following day, on July 14th.

On July 19, 2016, Mr. Payne appeared before the Court for a change of plea hearing. During this hearing, undersigned counsel stated to the Court that an offer had been extended by the United States Attorney's Office in Nevada to resolve the case in that district and "at this point, is only a contemplated agreement."[2]   Undersigned counsel further stated to the Court that "the foundation of the [plea] agreement" in Oregon was resolving the cases in both districts through

---

[1] Count 3 was subsequently dismissed by the Court (Doc. 671).
[2] Transcript, pg. 10.

agreement.   The prosecutor stated that Mr. Payne's sentencing exposure in the Nevada case was "massive."[3]

During the Rule 11 colloquy at the change of plea, Mr. Payne was placed under oath and acknowledged the terms of his plea agreement and the rights he was voluntarily waiving by entering a plea.   When asked by the Court if there was anything going on with him that was getting in the way of him making a good decision, Mr. Payne responded, "No, your Honor, other than I would say continued detainment, which is a -- lends a realism or, rather, an aspect of what the future would hold quite possibly for the rest of my life if I did not take such a plea."[4]

After entering a plea of guilty to Count 1, Mr. Payne stated the following as a factual basis for his plea:

> Ah, your Honor, the very first adult decision that I ever made was when I was 17, to join the military of the United States. And in so doing, I took an oath to uphold and defend the Constitution. I traveled to Harney County, here in Oregon, under the pretense that this was my intent. That I was coming to uphold and defend the Constitution.
> In pursuing that effort, I understand I -- I have come to understand that folks who were -- who work for the Government, that that Constitution ordained, perceived my actions as threatening or intimidating. And, thereby, I – I understand myself to have been guilty of the charge that I'm charged with.[5]

The Court inquired whether Mr. Payne agreed that his actions actually impeded government officials.   Mr. Payne responded, "[a]s it has been presented to me, it is my understanding that I did, your Honor."[6]

---

[3] Transcript, pg. 9.
[4] Transcript, pgs. 19-20.
[5] Transcript, pgs. 43-44.
[6] Transcript, pg. 45.

The Court advised Mr. Payne that a conspiracy crime itself doesn't require proof that federal officials were actually impeded, as the crime is committed by the agreement.    The Court then inquired whether Mr. Payne understood that a conspiracy crime is the agreement to intentionally engage in conduct that has a result that need not actually happen, which Mr. Payne acknowledged and stated he did.    Following the discussion between the Court and Mr. Payne, the Court accepted the guilty plea of Mr. Payne to Count 1 of the Superseding Indictment and set a date for sentencing.

Subsequent to the change of plea hearing, the prosecution produced seven additional volumes of discovery to all defendants.    The later discovery productions included materials that became exhibits in the trial of co-defendants currently ongoing before the Court.[7]    Additionally, subsequent to the change of plea, the government acknowledged the use of confidential informants, such as Mr. Mark McConnell, that had not been disclosed to Mr. Payne on the date he entered a plea.

Following his change of plea hearing, Mr. Payne was transported in custody to the District of Nevada so he could work with his appointed counsel to face the charges in the Nevada case. As of the date of this filing, no agreement has been reached and there is no plea offer still available to Mr. Payne in Nevada.    The Nevada case remains set for trial to begin in February 2017.

---

[7] For example, Prosecution Exhibit 49 is a video of Mr. Payne and others at the Malheur National Wildlife Refuge from January 7, 2016.    It shows Mr. Payne leading a discussion with a large group of others in which he states their collective purpose for being at the Refuge and the legitimate grievances they had raised.    Mr. Payne also made clear that "we don't want violence…"

On September 16, 2016, Mr. Payne moved this Court to continue his sentencing hearing for at least 90 days (Doc. 1289).   On September 19, 2016, the Court granted the motion and sentencing is currently set for February 17, 2017.

## APPLICABLE LAW AND BASIS FOR WITHDRAWAL

Federal Rule of Criminal Procedure 11(d)(2)(B) governs withdrawal of guilty pleas.   The Rule "directs a district court to permit a defendant to withdraw a guilty plea before sentencing if the defendant comes forward with any fair and just reason for doing so." *United States v. Ortega-Ascanio*, 376 F.3d 879, 887 (9th Cir. 2004).   Although a defendant may not withdraw a guilty plea "simply on a lark," the fair and justice standard "is generous and must be liberally applied." *United States v. Ensminger*, 567 F.3d 587, 590–91 (9th Cir. 2009).

The timing of the motion to withdraw a guilty plea is critically important.   Before sentencing, a defendant "need not prove that his plea is invalid" in order to meet the standard for withdrawal of the plea. *Oretega-*Ascanio, 376 F.3d at 884.   Instead, a more liberal standard applies, permitting withdrawal of the plea on grounds including "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *Id.* at 883 (citing *United States v. Turner*, 898 F.2d 705, 713 (9th Cir. 1990)). If a defendant demonstrates one of these grounds, withdrawal of the plea should be "freely allowed." *United States v. Showalter,* 569 F.3d 1150, 1154 (9th Cir. 2009).

Mr. Payne moves to withdraw his plea well before sentencing, and also before a verdict has been reached in the trial of his co-defendants in the District of Oregon on the same charges. His motion is thus made without the benefit of a verdict in that case or any preview of how a jury

will weigh the evidence of the case either for or against him through its verdict.    Because Mr. Payne sets forth a number of fair and just reasons for withdrawal of his plea, he respectfully requests that the Court grant this motion.

A.    *Intervening Circumstances in the District of Nevada Provide a Fair and Just Reason for the Court to Permit Mr. Payne to Withdraw his Guilty Plea*

As stated during the change of plea hearing, the foundation of the Oregon plea agreement was that an agreement would also be reached in Nevada.    Mr. Payne was given a very short period of time in Oregon from the date the plea offer was received on July 12th, before that offer expired at 5:00PM on July 13th (Doc 905).    On the date Mr. Payne signed the Oregon plea agreement, the Nevada offer was only in a draft format.    Notably, the entire "statement of facts" section of the Nevada plea offer had been left blank.    When Mr. Payne arrived in Nevada, he was only then provided a "statement of facts" that Nevada prosecutors demanded he agree to in order to secure the deal.    Subsequent negotiations have not been able to break through the differences between the parties in Nevada.[8]    On the date he entered a guilty plea in Oregon, had Mr. Payne known all the terms of the deal in Nevada, he would not have signed the deal in Oregon.

The intervening circumstances that occurred subsequent to his plea are that the final terms of the plea offer in Nevada were not known to him until after he arrived in the District of Nevada. As was articulated to the Court during the change of plea, the Nevada case and its punitive exposure weighed heavily over Mr. Payne's ability to make an informed, voluntary decision regarding the case in Oregon before this Court.    Mr. Payne necessarily took on some risk by

---

[8] Facts regarding the Nevada plea offer are presented here by proffer and would be adduced at a hearing on this motion, if a hearing is required.

entering a plea in Oregon without a signed deal in Nevada.    As he informed the Court, Mr. Payne felt the pressure of "massive" sentencing exposure in the Nevada case in particular, and the "realism" of "what the future would hold quite possibly for the rest of my life if I did not take such a plea."    However, fairness and justice dictate that once relieved of the time pressures and having more time to reflect upon the Nevada case, Mr. Payne is in a much better position today to make an informed decision regarding his legal options in both districts.

Additionally, Mr. Payne's case is unique in that he is being prosecuted simultaneously in two federal districts, in complex trials.    This Court previously acknowledged that having Mr. Payne and his co-defendants be charged in both districts was "a most unusual situation the defendants are facing here."    The "unusual situation" of simultaneous prosecutions should be considered by the Court when weighing whether intervening circumstances in another case, in another district, are compelling to meet the "fair and just" standard.    Because the parties and Mr. Payne were clear at the change of plea hearing that the "foundation" of the Oregon plea deal was reaching a similar deal in Nevada, the change in circumstances upon Mr. Payne's arrival to the District of Nevada weigh in favor of granting withdrawal of his plea.

Finally, taken all of the facts and circumstances together, the Court must apply the "fair and just" reason standard liberally to Mr. Payne's request for withdrawal.    The intervening circumstances of the breakdown of plea negotiations in Nevada, coupled with unusual circumstances of simultaneous prosecutions of complex cases in two districts, lead to the conclusion that Mr. Payne has shown fair and just reasons permitting the withdrawal of his guilty plea in Oregon.

B.    *Newly Discovered Evidence Was Provided After Mr. Payne's Guilty Plea*

Although many of the facts of what occurred at the Malheur Refuge are not in dispute, the legal significance attributed to those facts is highly disputed.    Proof of a conspiracy requires intent. Thus, any and all statements of intent, motive, and purpose are extremely relevant to an ultimate determination of guilt.

Subsequent to the change of plea hearing, the government produced seven additional volumes of discovery to all co-defendants.    Some of this new information was particularly germane to Mr. Payne.    For example, it included a video that depicts Mr. Payne talking to many others at the Refuge on January 7, 2016.    In the video, Mr. Payne is shown discussing the goals of the protest, discussions he and others previously had with Harney County Sheriff Dave Ward, and Mr. Payne's clear statements to alleged co-conspirators that they do not want violence.    The existence of corroborating evidence of Mr. Payne's non-violent intentions is a factor for the Court to consider when evaluating the effect of new evidence.

More significantly, prior to Mr. Payne's change of plea hearing, the government had not disclosed the extent of its use, nor the names of confidential informants employed by the government to infiltrate meetings at the Refuge and elsewhere.    It has now been revealed that some of the inculpatory conduct and statements attributed to Mr. Payne apparently were made to confidential informants, a fact previously unknown to Mr. Payne.    Had Mr. Payne and his counsel been aware of this basis for impeachment of the government's potential witnesses, they could have evaluated the strength of the government's case differently.

Newly discovered information need not be exculpatory in order to warrant withdrawal of a guilty plea. *United States v. Garcia*, 401 F.3d 1008, 1011 (9th Cir. 2005) (noting that defendant

need not "show that the new evidence exonerates him or that there is a reasonable probability he would not have been convicted had the case gone to trial").    Instead, the question is whether the new evidence "could have at least plausibly motivated a reasonable person in [the defendant's] position not to have pled guilty had he known about the evidence prior to pleading." *Garcia*, 401 F.3d at 1111–12.    Again, in weighing whether newly discovered evidence provides a basis to permit Mr. Payne to withdraw his guilty plea, the Court must apply the standard liberally towards the relief he seeks.

C.    *The Rule 11 Plea Colloquy Demonstrated that Mr. Payne Did Not Fully Agree to the Factual Basis for his Plea to Count 1*

The Court undertook a lengthy colloquy with Mr. Payne regarding his understanding of his rights and the plea agreement.    The Court must also determine if there is a factual basis for a plea before accepting it.    Fed. R. Crim. Pro. 11(b)(3); *Santobello v. New York*, 404 U.S. 257, 261 (1971) ("the sentencing judge must develop, on the record, the factual basis for the plea, as, for example, by having the accused describe the conduct that gave rise to the charge."); *United States v. Rivera-Ramirez*, 715 F.2d 453, 457 (9th Cir. 1983), cert. denied, 467 U.S. 1215 (1984) (a district court must "establish[ ] on the record that there is sufficient evidence to support the conclusion that the defendant is guilty.").

It is clear from his responses at the change of plea hearing that Mr. Payne had serious misgivings and reservations regarding the factual basis for his plea.    His responses were equivocal, at best, regarding the factual basis and whether he believed he was really guilty of the crime.    For example, Mr. Payne stated that "I have come to understand that folks who were -- who work for the Government, that that Constitution ordained, perceived my actions as threatening

or intimidating." This followed a statement in which Mr. Payne said that his true intent in traveling to Harney County, Oregon was to "uphold and defend the Constitution." He also stated that "as it has been presented to me," it was his understanding that his conduct actually impeded federal officials through threat or intimidation. The only response regarding the factual basis that was unequivocal was a simple affirmative response ("I did, your Honor") to the question pointed specifically towards whether he entered into an agreement to intentionally engage in conduct.

The Court need not find that Mr. Payne's plea was invalid to allow him to withdraw it. *Oretega-Ascanio*, 376 F.3d at 843. When the Court liberally applies the "fair and just" standard, it should consider, as a matter of fairness, that Mr. Payne was extremely equivocal in his responses regarding the factual basis for his plea. His equivocations, coupled with the pressure of the situation and the statement of his true intent to engage in lawful conduct, may also persuade the Court that Mr. Payne's guilty plea should be withdrawn.

## CONCLUSION

Mr. Payne has adequately demonstrated that fair and just reasons exist for the Court to permit him to withdraw his guilty plea. He fully understands that such a result will necessarily lead to the prosecution likewise withdrawing from the plea agreement and its obligations contained within the agreement. Once the plea of guilty is withdrawn, Mr. Payne respectfully requests a trial by jury at a date and time to be determined.

Respectfully submitted this 12th day of October, 2016.

_____
Rich Federico
Assistant Federal Public Defender

**Page 10 DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA AND PROCEED TO TRIAL BY JURY**
*United States v. Ryan W. Payne, 3:16-cr-00051-BR-4*